THOMAS B. MELVIN v. LOUIS HOFFMAN, TRUS-
    TEE, et al.; LULA MELVIN THOMSON and
    NANNIE M. MAY, Appellants.

In Banc, November 30, 1921.

1. **JUDGMENT: Finality.** When an issue has once been decided by a court of competent jurisdiction in a former suit between the same parties, the losing party cannot vex his adversary again with the same issues or matter embraced therein.

2. ———: ———: **Matters Which Might Have Been Adjudicated.** A former judgment is conclusive, not only of matters in issue and embraced within the issues, but as to all matters which the parties could have alleged to sustain their action or defense. If the former suit was one in equity to cancel, set aside and annul a certain deed, and judgment therein was rendered for defendants, all matters which plaintiff could have alleged to set aside and cancel said deed in equity are deemed to have been adjudged in defendants' favor, whether or not alleged in the petition in said cause.

3. ———: ———: **Insanity: Revocable Deed: Res Adjudicata.** Plaintiff had conveyed his land to a trustee for his own use and benefit during his life and after his death for the use and benefit of his wife and children during her widowhood and their minority, and upon her death or remarriage and the majority of his children the trustee was to convey the property to his two sisters, and he brings suit to set aside said deed on the alleged ground that it was not his intention that it should be irrevocable, that he was

not advised that it was irrevocable, that he understood it created a revocable and voluntary settlement, and that the power of revocation was omitted therefrom by mistake. He had brought a former suit to set aside said instrument on the ground that at the time of executing it he was insane and wholly incapable of understanding its terms or purport, and that his said sisters and their husbands took advantage of his insane condition and induced him to sign the same while in such condition; the sisters and their husbands in their answer in said former suit denied he was insane at the time, alleged that he fully understood the purpose of said deed and the objects to be obtained thereby, and was fully advised and perfectly competent to understand all matters and facts connected therewith, and voluntarily executed the same for his own advantage and protection, and they prayed that the court inquire into and determine the validity of the deed and the rights of the parties thereunder; and the judgment found ''the issue for defendants'' and it was further adjudged and decreed that the plaintiff at the time of executing said instrument was of sound mind and fully capable of understanding its terms and purport and did understand its contents and meaning, and that said deed and the trust created thereby be in all respects sustained and plaintiff's bill to annul and cancel the same be dismissed; and this former judgment was pleaded as *res adjudicata* to plaintiff's cause of action in this suit between the same parties. *Held,* that, the only allegations in the present petition for setting aside said deed which were not specifically made in the petition in the other being that plaintiff ''was not advised that said deed was not irrevocable, but this plaintiff, at the time of executing the same, understood and intended that such instrument should and did create a revocable settlement, and that said power of revocation was omitted therefrom by mistake,'' all said issues were conclusively adjudicated against plaintiff by the judgment in the former suit.

4. ———: Res Adjudicata: Joint and Several Pleading. In equity in matters of pleading and procedure, as well as in other matters, the substance and not the form of things is regarded; and accordingly where, in the former suit, the answers of the defendants, though several, were in fact joint, and one decree was rendered for both, adjudging that a certain ''deed and the trust thereby created be in all respects sustained'' and thereby the issue in this suit to cancel said deed was determined, the separate answers in the former suit will be considered as a single pleading constituting a joint and several answer and authorizing the decree, which is now adjudged to be *res adjudicata* of the issue.

290 Mo.—30

5. **VOLUNTARY DEED: Revocation: Unexpressed Power: Presumption.** It is not the law of this State that the omission from a voluntary deed of settlement of the grantor's power to revoke it is presumed to have been done by mistake or that it was improvidently executed, or that such omission is prima-facie evidence of such mistake or improvidence. Nor would authorities from other jurisdictions so holding be applicable to this case, because the judgment in the former suit to cancel the deed adjudicated such facts against the grantor.

6. ———: ———: ———: **Binding Effect.** At law a voluntary deed or executed trust in favor of third parties is not revocable by the grantor, unless such power of revocation is expressed in the deed, but is valid and binding as if made for a full consideration.

7. ———: ———: **Authorizing Trustee to Convey to Beneficiaries: Executed Trust.** A voluntary deed of settlement conveying land in fee simple to a trustee for the use of the grantor during his life and after his death for the use of his widow and children during her widowhood and the minority of the children, and authorizing the trustee, upon the death of the widow and her children reaching twenty-one years of age, to convey the property to the grantor's sisters, the grantor being required to do nothing further in order to effect a complete disposition of the property as contemplated by the deed, is an executed trust, and not an executory one, and is not revocable simply because it authorizes the trustee to convey to the sisters and does not expressly declare it shall go to them without such conveyance.

8. ———: **Testamentary.** A voluntary deed of settlement, conveying the absolute title to a trustee, by the usual words of conveyance of present import, in trust for the benefit of the grantor during his life and of others after his death, vesting a present title and interest in the trustee and the beneficiaries, and leaving no title in the grantor whatever except the right to support, is not testamentary in character, nor does it have any earmarks of a testamentary disposition of the property.

9. ———: **Perpetuity: Remainders.** The rule against perpetuities is that the legal or equitable fee must vest within the life or lives of persons in being and twenty-one years and the period of gestation thereafter from the date the instrument takes effect; it does not apply to vested remainders, nor to contingent remainders which vest within that time.

10. ———: ———: **Vested Remainders: Life Estate to Grantor: Estate to Wife During Widowhood and Unborn Children During Minority: Remainder to Sisters.** An instrument which vested the complete

legal title in a trustee immediately upon its delivery, to be held by him for the benefit of the unmarried grantor during his life, and upon his death for the benefit of his possible wife during her widowhood and his unborn children during their minority, and re-quiring the trustee upon the wife's death or remarriage and the children reaching their majorities to convey the property to grant-or's two sisters, created vested estates within the rule of per-petuities.

a. The interests of the grantor's possible. wife and children were contingent upon their being in existence at the time of the grantor's death, but if then in being their estates took effect and vested at that time.

b. In so far as the sisters' remainder was limited to take effect upon the death of the grantor and of the widow, it was a vested remainder, because their deaths are sure to occur and the sisters were living when the deed was made.

c. In so far as the sisters' remainder was limited to vest when the children, if any, reached their majority, if the immediate clause in which it is stated that the trustee shall then convey to them is alone considered, it would be contingent, because the event (that of the children, if any, ever reaching majority) would be uncertain, but even in that case the title would vest in the sisters within twenty-one years and the period of gestation after the grantor's life had expired.

d. If the remainder to the sisters be contingent upon his chil-dren, if any, reaching the age of twenty-one years, then if he has children and they all die before reaching that age, their said re-mainder would fail and the fee would revert to the grantor and his heirs, because not disposed of by the deed.

e. But it is clear when the other clauses of the deed are con-sidered in connection with the one creating a remainder in the sisters, that it was its intention to dispose of the whole fee simple title, so that it would vest in the beneficiaries within a life in being and twenty-one years and the period of gestation thereafter, and it is therefore *held* that the title will vest in the sisters with-in that time, for it in effect requires the property to be conveyed to them upon the children reaching their majority, or upon their death before majority.

11.  ———: ———: **Withholding Income.** A voluntary deed of trust by which the trustee is required to collect the income and out of the moneys so received to pay the taxes and to pay the grantor "a sufficient sum of money, monthly or otherwise, as he may deem convenient and expedient, for the support and maintenance of himself and any family he may have, provided such payments shall never be in such an amount as not to leave funds to pay all taxes and to at all times leave the real estate or its proceeds intact and

fully protected and preserved for the benefit of the remaindermen hereinafter mentioned'' and making it ''entirely discretionary'' with the said trustee to pay over to said grantor ''the sums of money as hereinbefore directed,'' and declaring that upon the death of the grantor ''the trust shall continue for the use and benefit of the family of the grantor, if he leave any, during the widowhood of his wife, if he leave any, and the minority of any child or children, if he leave any,'' and upon the death of the grantor ''leaving no wife or child or children, or upon the death or marriage of his widow, if he leave any, and upon the majority of his child or children, if he leave. any'' then the said trustee ''shall convey and transfer'' the property to the grantor's sisters, did authorize the trustee to withhold the income from the grantor, but did not authorize or permit him to accumulate and withhold the income from the grantor's widow and children until her death, but expressly limited the trust, upon the grantor's death, to ''continue for the use and benefit of the family of the grantor, if he leave any, during the widowhood of his wife, if he leave any, and the minority of any child or children, if he leave any,'' thereby giving to them the use and benefit of the trust property without restriction or reservation, and hence the trustee is not invested with a power of accumulation which contravenes the rule against perpetuities.

12. ———: ———: **Sale and Reinvestment.** The power given to a trustee to sell and reinvest, instead of impeding, facilitates the transfer of property, and conserves the very purpose the rule against perpetuities seeks to promote. Any change or substitution of property by the trustee, authorized to sell it and to reinvest the proceeds for like uses and trusts, in no way alters the character of the trust property, or violates the rule.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B. Shain,* Judge.

Reversed and remanded *(with directions).*

*Montgomery & Rucker* for appellants.

(1) The trust deed is not void because in contravention of the rule against perpetuities. (a) The rule is directed only against future contingent interests and has no application to interests which necessarily vest (in right as distinguished from enjoyment) during a life or lives in being and twenty-one years thereafter. Gates

v. Seibert, 157 Mo. 254; Deacon v. Trust Co., 271 Mo. 695. (b) All estates created by this instrument so vest within lives in being and twenty-one years. First, the trustees estate vested upon the delivery of the deed; second, the estates of respondent's wife and children (if he should have any) will vest at the instant of his death; third, the estates of Mrs. Thomson and Mrs. May vested upon the delivery of the deed, as vested remainders in fee. (c) The provision of the deed that the trustee, at the termination of the intermediate estates, shall convey and transfer the property to appellants, does not prevent their estates from vesting upon the execution and delivery of the deed, or postpone the vesting thereof. The persons who take are certain. No contingency can destroy their present right to the future enjoyment of their estates. Grove v. Robards, 36 Mo. 525; Rodney v. Landau, 104 Mo. 257; Eckle v. Ryland, 256 Mo. 424; 30 Cyc. 1484. (2) The trust is an executed, and not an executory, one. Ewing v. Shannahan, 113 Mo. 195; Watson v. Payne, 143 Mo. App. 728; Taylor v. Welch, 168 Mo. App. 230; Banking Co. v. Miller, 190 Mo. 668. (3) The instrument is not testamentary in character, but passed the title upon its execution and delivery. Sims v. Brown, 252 Mo. 58. (4) The trust was deliberately and advisedly planned by the respondent and entered into, with an ample and proper motive, and is fully justified by the results. The case of Ricks Appeals, 105 Pa. 528, was chiefly relied upon below as deciding that if the creator of a voluntary trust is not advised by his counsel that the trust is irrevocable, that fact is prima-facie evidence of a mistake for which the courts will revoke the trust. This case is not applicable to the facts in this case, because: (a) This instrument is not testamentary. (b) And did not create a mere agency revocable at pleasure. (c) And is not a mere covenant for posthumous gifts and as such *nudum pactum*. (d) Respondent does not contend that anybody told him "he could change it at any time" or "annul it at pleasure." There is no charge of fraud. (e) The grantor in

Rick's Appeal did not wait sixteen years to seek relief in equity, and did not ratify it by thirteen years of acquiescence after learning that it was irrevocable. (f) The grantor was not seventy-five years old and illiterate, but thirty-two years old and educated. (g) The grantor created an irrevocable trust in order to protect himself and his family against his own incompetence and improvidence, as the grantor did in the following cases: Young v. Hyde, 255 Mo. 503; McFarland v. Bishop, 222 S. W. 146. (h) The rule announced is *obiter dictum* and hence not authoritative. (i) It is not in harmony with the great weight of authority in this country. 27 Am. & Eng. Enc. Law (1 Ed.), p. 310; Perry on Trusts, sec. 104. (j) No such rule has ever been applied in Missouri. (k) If the courts ever apply it, they will require the settlor to take prompt steps to revoke the trust, because the facts which determine the applicability of the rule rest in parol, that is, in the memories of witnesses and not in writings, and may be obliterated by mere lapse of time. A delay of sixteen years is too long. Furthermore, equity aids the vigilant and not those who sleep on their rights. (l) If the court should doubt that the settlor knew he was executing an irrevocable instrument, there is no doubt that he learned of that fact within two years thereafter. He waited fourteen years more before instituting this suit. Every day of delay amounted to a ratification and affirmance. Richards v. Trust Co., 97 Md. 608. (5) The express finding of the court in the suit of 1914 upon the issue joined as to whether the settlor fully understood the contents and purport of the deed, and the decree declaring the trust deed valid and in all respects sustained, are *res adjudicata* upon the issue here tendered by plaintiff that he did not understand the contents and purpose of the deed, and also as against all claims of plaintiff adverse to the trustee in the trust deed. (a) A point or question is in issue in a suit in such a sense that it will be concluded by judgment thereon, when an issue thereon is directly tendered and accepted by the pleadings. The judgment is conclusive, for the purpose of a

second suit between the same parties, of all facts, questions or claims which are directly in issue and adjudicated. 23 Cyc. 1302. It is immaterial that the forms in which the same issue may arise, are different. If it has once been decided by a competent court, on the merits, between parties who rights are afterwards sought to be litigated, the decision binds them. Young v. Byrd, 124 Mo. 597. (b) The answer of defendants in the suit of 1914 converted the same into a suit to determine title under Sec. 2535, R. S. 1909. That statute was designed to determine all questions relating to the respective titles of the parties and to put at rest the controversy. Hence the judgment of 1914 was conclusive of all rights of the parties at that time. Williams v. Hayti, 184 S. W. 470; Northcutt v. Eager, 132 Mo. 265.

*G. W. Barnett* and *Wilkerson & Barnett* for respondent.

The decree of the trial court, declaring the title to the property in question to be in plaintiff, should be sustained, because: (1) The instrument offends the rule against perpetuities in this: (a) It creates an active trust to continue during a term which may exceed lives in being and twenty-one years and the period of gestation thereafter. (b) It provides for a trust for accumulation and provides a contingency as to who shall take the trust accumulation, and such accumulation may continue for longer than lives in being and twenty-one years and the period of gestation thereafter. (c) The instrument provides for a power of sale and a power of lease, both of which may be exercised beyond lives in being and twenty-one years and the period of gestation thereafter. (2) The former judgment is not *res adjudicata* as to the effect of the rule against perpetuities upon the nature of the instrument. The former judgment set at rest forever the question as to the mental capacity of the grantor to make the deed, as to whether or not he was capable of understanding the nature of

the deed, as to whether or not he did actually under-
stand the nature of the deed, and possibly that the in-
strument was valid (though only as against the attacks
made upon it); but it did not determine whether it was
valid as a power or as a conveyance, and it did not de-
termine what title any person took under the instrument,
nor who had title, nor the nature of any title. It was
conceded in this case in plaintiff's petition that the in-
strument was valid as a power of attorney, but it was
claimed that a proper construction of the instrument
would show the title to be in plaintiff. (a) The in-
strument offends the rule against perpetuities because it
provides that the trustee shall hold the property upon the
uses and trusts therein mentioned during the lifetime of
Thomas Melvin, and upon his death, it should continue
during the lifetime of his wife, if he should leave any.
The instrument was executed eighteen years ago when
plaintiff was twenty-seven years old and was unmarried,
and he has never married since. From this it appears
that it is not only possible but well within the range of
possibility that Thomas Melvin may marry a woman
who was not *in esse* at the time of the execution of the
instrument who may outlive him for more than twenty-
one years and the period of gestation, which would ex-
tend the life of the trust with all of its attending powers
more than twenty-one years and the period of gestation
after the life of Thomas Melvin. (b) The life of the
trust is not measured by the life of the trustee, because
if he should resign or die it would be the duty of the
court to appoint a trustee to take his place. A trust will
never fail for want of a trustee. 39 Cyc. 277; Rothen-
burger v. Garrett, 244 Mo. 191. (c) It is not enough
that the time prescribed by the rule against perpetuities
may come within lives in being and twenty-one years and
the period of gestation thereafter. The nature of the
instrument must be such that the time limit must neces-
sarily come within lives in being and twenty-one years
and the period of gestation thereafter. 30 Cyc. 1483.
(d) The rule against perpetuities is not a rule of con-

struction, but a rule of public policy. It thwarts the intent of the parties. Therefore, in construing an instrument (except in case of a public charity), it is to be construed as though no rule against perpetuities existed. The intention of the owner having been thus determined, the rule is to be inexorably followed. 30 Cyc. 1498. (e) An attempt to create an active trust to continue beyond the period prescribed by the rule against perpetuities is void. American Colonization Society v. Solsby, 129 Md. 605, L. R. A. 1917 C. 937. (f) The instrument creates a trust for accumulation which offends the rule against perpetuities. It provides that the trustee may buy farming implements, that he may erect such buildings as he may consider necessary upon the land, and that out of the moneys, investments, interests and proceeds, the trustee shall pay to Thomas Melvin during his lifetime such money as he may deem expedient for the support of Melvin and any family he may have, but it shall be entirely discretionary with the trustee whether he shall pay over any money to Thomas Melvin during his lifetime, and that upon the death of Thomas Melvin, the trust (not the trust property) shall continue for the use and benefit of Thomas Melvin's family, if he leave any, during the widowhood of his wife, if he leave any. These provisions construed together create a trust for accumulation, and the vesting of the accumulation depends on a contingency, because the trustee has power to pay all or a part or none of the rents and profits to Thomas Melvin during his lifetime or to pay all or part or none of the rents and profits which accumulated during Melvin's life time to his widow, if he should leave any, and at the termination of the trust the accumulated fund, if not paid out by the trustee before that time, shall be paid to defendants Mrs. Thomson and Mrs. May, their heirs, executors, administrators or assigns. Who shall get the accumulated fund depends on the acts of the trustee, which acts may be exercised by the trustee until more than twenty years and nine or ten months after Melvin's death.

If the rights in property, the result of a trust for accumulation, may not become vested within the limits prescribed by the rule against perpetuities, the gift is bad. Andrews v. Lincoln, 95 Me. 541, 56 L. R| A. 103; Thorndike v. Loring, 15 Gray (81 Mass.) 391; Trust Co. v. Russell, 179 Fed. 446, 102 C. C. A. 592; In re Petti, 161 N. W. (Minn.) 158; 30 Cyc. 1498. All future limitations of personal property are executory limitations and are therefore within the rule. Grey on Perpetuities, p. 71, sec. 117. The instrument provides that the trust (not the trust property) should continue for the use and benefit of the widow and minor children. The effect of this is to substitute the widow and minor children as the *cestui que trust* in the place of Thomas Melvin, but was not intended to destroy or emasculate the trust itself. The power to invest the rents, profits and proceeds of the property in new buildings, and the power to hold back the accumulation and only pay out so much as the trustee though necessary for support, are each as important provisions as the provision that the trustee has power to take possession and manage to sell and lease the property. (g) The instrument creates powers to lease and to sell the property, which powers may be exercised more than twenty-one years and the period of gestation beyond lives in being, and in this respect the instrument offends the rule against perpetuities. The powers to sell, exchange, or lease settled property are subject to the rule against perpetuities. 30 Cyc. 1493; In re Johnson's Est., 39 Atl. (Pa.) 879; Cooper's Est., 9 Pa. 94; Barnum v. Barnum, 90 Am. Dec. (Md.) 88; Myers v. Providence Co., 19 Ont., 358; In re Phillips, 28 Ont. 94; Wear v. Pollhill, 11 Ves. 257, 32 Eng. 1087. Both equitable and legal estates are subject to the rule against perpetuities. 30 Cyc. 1495. (3) The former judgment was not *res adjudicata*. The present cause of action is totally different from the former cause of action. The former cause of action prayed the court to declare that the instrument was not the act of Tho Melvin. If this suit had been successful, the in

ment would have been of no effect because not his act. The trustee would not have been entitled to any compensation for his various services nor to any attorney's fees.    If the trustee had conveyed any property then his conveyance would have been void. The present suit recognizes the mental capacity of Thomas Melvin, recognizes the instrument as his act and deed, recognizes the full authority of the trustee, recognizes that the possession and operation of the farm by the trustee was rightful; that he was entitled to compensation therefor, but proceeds upon the theory that he is entitled to have the instrument construed, and a proper construction will show that the instrument is valid as a power of attorney and not as a conveyance.    This being true, the power of the trustee becomes a power wholly for the benefit of the grantor, and a trust wholly for the benefit of the grantor is revocable at will whether the power of revocation is expressed in the instrument or not, and it is alleged and proved that after the first suit and before this suit the plaintiff did expressly revoke the trust.    Folk v. Wind, 124 Mo. App. 577.    A mere naked power is revocable at the will of the donor or grantor.    31 Cyc. 1051.    The former suit was not a suit to quiet title nor to determine title.    The court had no jurisdiction in the former suit to determine title, because the answer did not set up allegations which would have been made a good bill for the determination of title, because the answer in the former case did not state that the defendants in that suit were the owners of a fee nor of a remainder nor of any interest in the estate nor that the defendant owned an interest in the estate, nor that plaintiff claimed some right, title and interest in the estate nor did it describe any property in which defendants claimed any estate.    An equitable defense in an answer must satisfy all the requirements of a good bill in equity.    Davidson v. Gowd, 187 S. W. 591.    The decree in the former suit did not attempt to determine title, nor the effect or nature of the instrument, nor whether it was valid as a conveyance or as a power of

attorney. 23 Cyc. pp. 1215-1218; pp. 1289-1292; 23 Cyc. 1297; Cromwell v. County, 94 U. S. 351; Spurlock v. Missouri Pacific, 76 Mo. 67; Drainage Dist v. Tourney, 235 Mo. 94; Brannock v. McGoon, 141 Mo. App. 316; Eckert v. Pickle, 59 Iowa, 545. "Identity of the subject matter is not the true test to determine whether a judgment in one action is conclusive in another." 23 Cyc. 1298. "The true test is identity of issues." 23 Cyc. 1300. The great preponderance of authority sustains the rule that the estoppel of the judgment covers all points which were actually litigated and which actually determined the verdict or finding. 23 Cyc. 1304. The estoppel of a judgment extends only to the points directly involved in the action and decided. 23 Cyc. 1309; State v. Butler, Co., 164 Mo. 214; Fish v. Lightner, 44 Mo. 268; Ridgely v. Stillwell, 27 Mo. 128; Drainage Dist. v. Turney, 235 Mo. 94; Brannock v. McGoon, 141 Mo. App. 316. (4) When the second suit between the same parties is on the same cause of action, the judgment in the former suit is conclusive not only as to every question which was decided but was as to every other matter which the party might have litigated and might have been determined; but when the second action is on a different claim, or demand, or cause of action, the judgment in the first suit operates as an estoppel only as to the question actually litigated and determined. 4 A. L. R. 1174; 15 R. C. L. 963, 973; Palmer v. Sanger, 143 Ill. 34; Stringer v. Gambol, 155 Mich. 295; Slauson v. Englehart, 34 Barb. 198; Piper v. Hayward, 127 N. Y. Supp. 240; Douglas v. Blount, 62 S. W. 429; Drain. Dist. v. Turney, 235 Mo. 80.

SMALL, C.—The question presented in this case is, whether the defendants, Lula Melvin Thomson and Nannie M. May, appellants, have a valid remainder in the real estate described in the petition, by virtue of a certain trust deed dated December 31, 1903, made by the plaintiff to defendant, Louis Hoffman, as trustee. Said deed of trust is in words and figures, as follows:

"This indenture made and entered into this 31st day of December, 1903, by and between Thomas B. Melvin of Pettis County, Missouri, party of the first part, and Louis Hoffman of Sedalia, Missouri, party of the second part, witnesseth, that the party of the first part, for and in consideration of the sum of one dollar to him in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, and of the love and affection he bears for his sisters Mrs. Lula Melvin Thomson and Mrs. Nannie Melvin May, and for other good and valuable considerations moving him thereto, does, by these presents, grant, bargain, sell and convey unto Louis Hoffman the party of the second part hereto, the following described real estate, situated in the County of Pettis and State of Missouri, viz:" (here follows description of land) "and he does also hereby assign, transfer and convey to him, the said Louis Hoffman, all of the distributive share of the personal estate of his deceased mother, Mrs. Mary M. Melvin, coming to him as one of the heirs and distributees of said estate, and hereby authorizes and empowers the said Louis Hoffman to receive said distributive share from said administrator and the necessary receipts, acquittances and discharge to execute and deliver therefor.

"This conveyance and transfer is made upon the following uses and trusts and to the said Louis Hoffman as trustee for the following purposes, viz.:

"Upon the execution and delivery of these presents the said Louis Hoffman being invested hereby with the fee simple title to said real estate and to a right to said distributive share, upon and for the uses and trusts hereinafter set forth and declared, shall at once enter upon and take possession of said real estate. He shall use and manage the said real estate in such a way as shall seem to him to the best interest of the parties hereto, he may if he sees proper, permit and allow the party of the first part to cultivate and farm the same, but all the income, rents and profits therefrom shall be paid over and delivered to said second party; he may buy stock, farming

implements or whatever may be necessary for the profitable and proper use, conduct and management of said farm and may feed and raise stock of any and every sort, but the property and the proceeds of all such investment and uses shall be and remain the property of said Louis Hoffman upon the uses and trusts aforesaid. The said Louis Hoffman may lease said farm or otherwise conduct and manage it as he may deem to the best interest of the parties hereto. He shall invest the net proceeds arising from said farm operations and the money received from said distributive shares upon such terms, conditions and securities as he shall deem safe and secure; he shall pay all taxes which may be imposed upon any and all of said property; he shall keep a book account of all moneys received and all disbursements and in which shall be fully stated the facts, and these books shall at all times be open to the examination of the parties hereto. Out of said moneys, investments, interest and proceeds, the said Louis Hoffman shall set apart and pay said party of the first part during his lifetime a sufficient sum of money, monthly or otherwise, as he may deem convenient and expedient for the support and maintenance of himself and any family he may have, provided such payments shall never be in such amount as not to leave funds to pay all taxes and to at all times leave the real estate or its proceeds intact and fully protected and preserved for the benefit of the remainderman hereafter mentioned. It shall be entirely discretionary with the said Louis Hoffman to pay over to said party of the first part the sums of money as hereinbefore directed. If any attempt is made to anticipate such payment, or if such money should be diverted by the contracting of debts or liabilities of the said party of the first part, said Louis Hoffman shall withhold the same and shall allow such money to accumulate, but he may purchase for the family of said party of the first part, if he have any, provisions and other necessaries for their maintenance.

"The said Louis Hoffman shall also have full power and authority to sell, transfer and convey the real estate

hereinbefore described or others which may be bought in place thereof, as hereinafter directed, and to convey the fee simple title thereof free from the uses and trusts herein declared upon the written consent to him of the party of the first part and the said Nannie M. May and Lula M. Thomson or such of those as may be living at the time of such sale shall be made and the proceeds of such sale shall be invested in other real estate or other securities upon the like uses and trusts as are herein declared and set forth with full power to change the investment and convey or assign the same either real or personal but always subject to the same uses and trusts, as are herein declared. The said Louis Hoffman may erect such buildings as may be necessary upon said lands or any of them as may be necessary for the comfortable use and occupancy thereof by said party of the first part or himself and family. Upon the death of the party of the first part the trust shall continue for the use and benefit of the family of the party of the first part if he leave any during the widowhood of his wife if he leave any, and of the minority of any child or children if he leave any. Upon the death of the party of the first part leaving no wife or child or children, or upon the death or marriage of his widow, if he leave any, and upon the majority of his child or children, if he have any, then the party of the second part shall convey and transfer to his sisters Mrs. Lula Melvin Thomson and Mrs. Nannie M. May, their heirs, executors, administrators or assigns share and share alike the real estate hereinbefore described; or such other real estate or other investment into which said lands may be changed as also whatever may remain of any of the personal estate aforesaid.

"It is understood that the party of the second part shall retain from the property herein referred to a reasonable compensation for his services and for the care and management of the trust hereby imposed upon him and such necessary expenses and outlays as may be incurred in the exercise of his discretion and in his judgment in the premises.

"And the said Louis Hoffman party of the second' part, hereto assumes the duties of the trust hereby imposed and covenants and agrees to faithfully and honestly discharge the same.

"In witness whereof the parties of the first and second part hereto have subscribed their names and affixed their seals the day and date first aforesaid.

"THOS. B. MELVIN,   (Seal)
"LOUIS HOFFMAN,   (Seal)

"State of Missouri, County of Pettis, ss.

"On this 31st day of December, 1903, before me personally appeared Thomas B. Melvin and Louis Hoffman to me known to be the persons described in and who executed the foregoing instrument and acknowledged that they executed the same as their free act and deed.

"In testimony whereof I have hereunto set my hand and affixed my official seal at my office in Sedalia the day and year first above written.

"My commission expires on the 31st day of December, 1903.

"A. P. MOREY,
"(Seal)                    Notary Public.

"Com. ex. Jany 15-1907."

"Filed for record on the 31st day of December A. D. 1903, at 3 o'clock and 30 minutes P. M.

"LEE LOONEY,
"Recorder."

The original petition was filed October 9, 1918. An amended petition was filed January 3, 1919. After alleging that plaintiff was the owner of said real estate— a farm of about 170 acres in said Pettis County—said amended petition alleged the making and recording of said deed of trust and set out in detail the provisions thereof, and then continued, as follows:

"Plaintiff states that said instrument, except for the power of revocation, did create a voluntary settlement both unreasonable and improvident, that said instrument was executed by this plaintiff when he was a young man, and it was not his intention at the time of

executing said instrument that the same should be irrevocable, that at the time he executed said instrument he did hold conference with the defendants to this suit, and with their counsel, and he was not advised that said instrument was irrevocable, but this plaintiff at the time of executing said instrument understood and intended that such instrument should and did create a revocable and voluntary settlement. Plaintiff states that the defendants Lula Melvin Thomson and Nannie M. May are his sisters, that they are not now and were not at the time of executing such instrument, dependent upon this plaintiff, but they both are and at such time were in independent circumstances, and this plaintiff was under no obligation or duty to execute said instrument in their behalf.

"Plaintiff states that said instrument did not convey or create any right, title or interest in or to the real estate hereinbefore described, either present or in reversion or remainder, either vested or future or certain or contingent, in defendant Lula Melvin Thomson or in defendant Nannie M. May; that the trust in defendant Louis Hoffman created by said instrument was a trust wholly for the benefit of the creator of said trust, to-wit, this plaintiff; and that said instrument did only create an agency and power of attorney in defendant Louis Hoffman for the benefit of this plaintiff and that said trust, agency and power of attorney were revocable at the will of this plaintiff. Plaintiff further states that said instrument was a voluntary and executory settlement, and that no consideration was given or paid for the execution of the same.

"Plaintiff further states that on the third day of September, 1918, after the execution and recording of said instrument and before the filing of this suit, this plaintiff did revoke the agency, trust and power of attorney of the said Louis Hoffman, created by said instrument, and did terminate the same and did notify defendant Louis Hoffman that the same was revoked and terminated.

290 Mo.—31

"And the plaintiff states that he is now the owner. in fee simple of the above described real estate, free from any agency or trust or power of attorney created by said instrument, and the defendants have no right, title or interest in or to said real estate, but the defendants Louis Hoffman, trustee, and Lula Melvin Thomson, and Nannie M. May, claim to have some title, estate and interest in such property by reason of such instrument, and said instrument is of record in the records of the Recorder of Deeds of Pettis County, Missouri, and constitutes a cloud upon the title of this plaintiff, and this plaintiff has no adequate remedy at law.

"Wherefore, plaintiff prays the court to define and adjudge by its judgment and decree the title, estate, and interest of the parties severally in and to such real property and that the court hear and finally determine any and all rights, claims and demands whatsoever of the parties hereto or any one of them, concerning or affecting said real property, and that the court declare the title to said property to be in this plaintiff, and that the court declare the agency, trust and power of attorney created by said instrument to be terminated and revoked, and that the defendants are without any right, title or interest in or to such property and for all further and proper relief."

Defendants, Lula Melvin Thomson and Nannie M. May, filed separate answer, admitting that on the 31st day of December, 1903, plaintiff was the owner of the real estate in question and executed the deed of trust described in the petition, and specifically denied all other allegations in the petition. Said answer set up affirmatively that said deed of trust is and was at all times a valid instrument and in full force and effect. That at the time said deed of trust was made, plaintiff was young and inexperienced and afraid he might be imposed upon and lose or dissipate his property, and, therefore, he caused said conveyance to be made to said Louis Hoffman, as trustee, a competent business man, who has ever since paid over to plaintiff from the profits all the money plain-

tiff needed or desired, and managed said property for a period of sixteen years in a wise and judicious manner so that said estate was largely increased in value. That said trustee has rendered regular accounts annually, approved by the plaintiff and filed in and approved by said court. That by his conduct in thus receiving benefits of the trust relation plaintiff had ratified and affirmed said deed and is now estopped to question its validity. Said answer further set up a judgment for defendants in a prior suit instituted by the plaintiff in 1914 in said court against said defendants, to set aside said deed of trust, as *res adjudicata* and a bar to plaintiff's action herein and to all claims in his petition.

The answer of defendant Hoffman was to the same effect as that of his codefendants.

Plaintiff in his reply, denies the new matter set up in the answer, except, that he admits that his youth and inexperience and fear that he might be imposed upon moved him, among other things, to execute the said instrument or deed of trust. The reply also states that the only question settled in the former suit between the parties was the mental capacity of the plaintiff to make and execute the instrument in question, and that none of the questions involved in this suit have ever been adjudicated.

At the trial, plaintiff, on his own behalf, testified, among other things, that he was twenty-seven years old when the deed of trust was made, and forty-two when the case was tried, January, 1919. Over defendants' objection, he testified that after the partition sale of his mother's estate, he went with his brother-in-law over to Mr. Montgomery's law office, he supposed, for the purpose of making deeds to each other for the estate. When he reached said law office, his two sisters, and defendant Hoffman, were there, and his brother-in-law Thomson suggested that he make a deed of trust to defendant Hoffman as trustee. The suggestion was concurred in by his sisters, and without consulting any lawyer, or being advised that the instrument was irrevocable, or hav-

ing it explained to him in any way, and not understand-ing that it could not be taken back, he executed the deed of trust in question. He made no suggestions about its contents. His sisters were married and got the same part of the mother's estate that he did. They paid him no consideration for the conveyance. Did not remember whether it was read over or not. He farmed the prop-erty himself for two years after the trust was made, and after that it was rented out by Judge Hoffman, who paid him money from time to time; never refused him. It was a year or so probably before he found out he could not sell the property. That his sisters had some right in it, and he asked them to make quit-claim deeds to it, but they refused. About the first of January, every year after the instrument was signed, he would go to Judge Hoffman's office, and there saw annual settle-ments or accounts, which Judge Hoffman made as trustee. Did not know whether he signed them or not. He paid no part of the fee to the lawyer for writing the deed of trust.

Defendant Hoffman testified: That he was a lawyer at Sedalia and had been since 1876. Was never attorney for any of the parties, and before the trust deed was executed plaintiff and his brother-in-law, Thomson, came to his office. Thomson doing the talking said that plain-tiff had come into an estate from his mother, and was afraid that he might be overreached in trading and want-ed to put it in the hands of a trustee. That they had agreed upon witness as trustee, and came to see if he was willing to serve. He said that he would. A day or two afterwards, plaintiff came to witness's office by him-self, and said that the parties were all together in Mr. Montgomery's office, and they wanted him to come over there. When he got there, the plaintiff and his two sis-ters, and the two Mr. Montgomerys, and their stenograph-er, were there. Did not think that the deed was completely written up when he got there. There were some things added to it and completed while he was in their office. He was sure that it was discussed as to what the deed

was to contain before it was signed.  John Montgomery
explained the purport of the instrument.  He said they
would not require any bond of him.  He then said the
general purport of the instrument was to convey the title
to witness in trust for the benefit of the plaintiff, Tom
Melvin, and for his wife, if he should leave a widow,
during her widowhood, and children, if he should have
any, until they were of age, and the remainder was to
go to his two sisters, Mrs. May and Mrs. Thomson.

Witness further testified: "And the general idea
was that Tom was afraid he might be overreached in
trading, and if this place was fixed so he could secure the
principal of the estate that he had, that he might use all
the proceeds, get the benefit of all the proceeds of the
estate for his own life and living, but he couldn't be trad-
ed out of it.  .  .  .  Finally, before it was signed it was
read aloud in the hearing of all of us, and Mr. Tom Melvin
signed it and I signed it."  It was duly acknowledged
and delivered to witness, who had it recorded.

"Well, now, what did taking charge of the estate
consist of at that time?  What did you receive from Tom?
A.  Well, now, you know, of course, perhaps there was no
physical turning over at that time so far as Tom was
concerned.  My recollection now is that Tom was farm-
ing that land, or was getting ready to farm it for the
next spring.  I know he farmed it the next spring.  I
know we had an understanding that he could stay there
and farm it, and my understanding always was that he
always turned over the proceeds of what he sold, to me.
Now, we have—but if he needed anything for his own
use I gave him the liberty to use it.  Whenever he needed
any money and would come to me, I would give it to him.

"Q.  Did he ever ask for money that you didn't give
it to him?  A.  No, sir.

"Q.  Did the amount of money you gave him equal
the trust?  A.  No, sir, I don't think it ever did.

"Q.  In fact, money accumulated in the trust all the
time?  A.  Yes, sir."

That witness made some improvements on the farm costing two or three thousand dollars. Kept the taxes paid. Made yearly settlement of his account, which were signed and approved by both plaintiff and his sisters, and also filed in and approved by the circuit court ever since the execution of the deed. That pursuant to the decree in the prior suit between the parties in 1914, he paid over to the plaintiff all the personal property and money accumulated in the trust fund at that time, less attorneys' fees and costs, as required by said decree. But plaintiff voluntarily returned the same to witness about three years before the trial of this case, to hold and invest for him, and that witness now has such funds in his hands for plaintiff amounting to about $9,000. Since the decree of 1914 funds from the rents and profits of the real estate, over and above what he has paid plaintiff for his living, taxes, etc., having accumulated in his hands, amounting to about $1,700. He never knew that plaintiff had been in the insane asylum until a short time after the instrument was executed. Here plaintiff's counsel stated that it had been adjudicated, and he claimed, that plaintiff was sane at the time he made the deed, and defendants' counsel said he did not object to the evidence of such previous insanity, as it was persuasive that plaintiff needed some one to take care of his property and see that it was not dissipated.

Defendants, Mrs. May and Mrs. Thompson corroborated the testimony of defendant Hoffman.

At the trial of the case, to support their plea of former adjudication, defendants introduced the pleadings and decree of the court in the former suit. The petition was as follows:

"In the Circuit Court of Pettis County, Missouri, October Term, 1914. Thomas B. Melvin, Plaintiff, vs. Lula Melvin Thomson and Eugene Thomson, her husband, Nannie Melvin May and P. A. May, her husband, and Louis Hoffman, Trustee, Defendants.

"Plaintiff states that on the 31st day of December, 1903, plaintiff was the owner and in possession of the following described real estate, to-wit:" (Here follows description).

"Plaintiff states that prior to the said 31st day of December, 1903, he had been adjudged insane by the County Court of Pettis County, Missouri, and sent to the Hospital for the Insane at Nevada, Missouri.

"Plaintiff states that a short time after he had been discharged from the said asylum for the insane, to-wit: December 31, 1903, he was induced to and did sign his name to a certain instrument of writing or deed whereby according to the terms of said writing he conveyed to one of the defendants, Louis Hoffman, as trustee, all of said above described real estate and in addition thereto all of plaintiff's distributive share of the personal estate of plaintiff's deceased mother, Mary M. Melvin, coming to him as one of the heirs and distributees of said estate.

"Plaintiff states that at the time he signed said alleged deed or instrument of writing he was insane and wholly incapable of understanding the terms or purport of said alleged deed, and at said time had not recovered from the insanity aforesaid and did not know or understand the contents and meaning of said alleged deed, and did not know that he was by said alleged deed conveying his said property to the defendant, Louis Hoffman, as trustee.

"Plaintiff states that defendants knew plaintiff was insane at the time he signed said alleged deed and that defendants Lula Melvin Thomson, Eugene Thomson, Nannie Melvin May and P. A. May took advantage of plaintiff's insane condition of mind and induced plaintiff while in such condition to sign said alleged deed.

"Plaintiff says that said alleged deed is wholly without consideration, that the same was not the act and deed of this plaintiff, and that said deed is void.

"Wherefore plaintiff prays that said pretended deed be declared null and void and held for naught.

"W. D. STEELE

"Attorney for Plaintiff.

"Filed Sept. 18, 1914. Geo. W. Driskell, Circuit Clerk."

The answer of defendants, Lula Melvin Thomson and Nannie M. May, was as follows:

"In the Circuit Court of Pettis County, Missouri, October Term, 1914. Thomas B. Melvin, Plaintiff, vs. Lula Melvin Thomson et al., Defendants.

"Now come the defendants, Lula Melvin Thomson and Eugene Thomson, her husband, and Nannie Melvin May and P. A. May, her husband, and for their answer to the plaintiff's petition, by leave of court first had and obtained, say that it is not true and that they deny that the plaintiff is the owner of or in possession of the real estate described in the plaintiff's petition, except under the circumstances hereinafter stated.

"The defendants deny that prior to the 31st day of December, 1903, the said Thomas B. Melvin was adjudged insane by the County Court of Pettis County and sent to the Hospital for the Insane at Nevada.

"Defendants admit that on the 31st day of December, 1903 the plaintiff executed a certain instrument of writing whereby he conveyed to the defendant, Louis Hoffman, as trustee, the real estate described in the plaintiff's petition and his distributive share of the personal estate coming to him from the estate of his mother, Mary M. Melvin, deceased." (Here follow specific denials of each allegation in the petition).

"Further answering these defendants say that at the time of the execution of said deed the plaintiff fully understood the purpose of said deed, the objects to be obtained thereby, and that he fully understood what he was doing and the disposition he was making of his said property; that he was fully advised and was perfectly competent to understand all the matters and facts in connection therewith and that he executed the same

voluntarily and of his own free will and for his own protection and advantage.

"That at the time of the execution of said deed there had come to the plaintiff a large amount of valuable property consisting of the real estate aforesaid and of personal property of great value from the estate of his deceased mother; that the plaintiff was young and inexperienced and liable to be imposed upon and to lose said property, and that realizing this fact he himself caused the conveyance to be made whereby he could secure a perfectly competent trustee, a man of well known business discernment, safe judgment, conservative and sound in his business methods, perfectly responsible and honest in all his transactions and dealings, to whom he could commit the management of said property and under whose supervision the plaintiff could have the full control thereof, reserving by said deed to himself the real estate and the use thereof and the profits therefrom during his life and the use of all of the income from the real and personal property, and such of the principal thereof as might be necessary for his comfortable living and enjoyment. That said deed was freely and advisedly executed; that thereupon the trustee entered into the possession of said property giving the plaintiff the free use and enjoyment thereof; . . . that during the whole period of time since the execution of said deed the plaintiff has enjoyed the profits of the trust relation created by said trustee (?) and has during all these years by his conduct and acts ratified and affirmed said deed and that he is now estopped from claiming that same is not his free and voluntary act. . . .

"The defendants say they are entitled to have the validity of said deed of trust inquired into and ascertained and determined by this court and the rights of the parties hereto therein respectfully (respectively) determined and fixed by the judgment and decree of this court.

"Wherefore, these defendants pray that the court will ascertain and determine the rights of the parties

to this action under and by virtue of said trust deed and by its judgment declare such rights so that the same may be established by the judgment and decree of this court and the rights and interests of all the parties hereto fully determined and settled.

"And defendants pray for such other and further relief as to the court may seem meet and proper.

"MONTGOMERY & MONTGOMERY

Attys. for Defendants.

"Filed Oct. 16, 1914. Geo. W. Driskell, Circuit Clerk."

The answer of defendant, Hoffman, trustee, in said cause, put the matters alleged in the petition in issue, and alleged that by said deed "plaintiff conveyed to this defendant, as trustee for plaintiff, and for defendants, Lula Melvin Thomson and Nannie Melvin May, sisters of said plaintiff, all the real estate described in plaintiff's petition and all of plaintiff's distributive share of the personal estate of plaintiff's deceased mother, Mary M. Melvin." That said defendant, trustee, signed said deed of trust and took charge of said property, and ever since the execution of said deed managed said property as trustee in good faith and had filed annual settlements, as such trustee, all of which were approved by the plaintiff and his codefendants, Lula Melvin Thomson and Nannie Melvin May, and that said defendant was ready at any time to make final settlement and turn over the assets to any person named by the court, and prays the court to examine his accounts and make the same matter of record.

The decree in said cause was as follows:

"Now on this day come the parties by their respective counsel and by consent of all the parties hereto, they all being represented in court by counsel and the plaintiff in person and by his counsel, this cause is taken up and submitted to the court, and the court having heard the evidence in the cause and fully considered the same and being fully advised in the premises, finds the issue for the defendants; and the court finds that at

the time of the execution of the deed in trust to the defendant, Louis Hoffman, as trustee, the plaintiff, the maker thereof, was of sound mind and fully capable of understanding the terms and purport of said deed of trust and understood its contents and meaning, and it is decreed and adjudged by the court that said deed and the trust created thereby be in all respects sustained and the plaintiff's bill to annul and cancel the same be dismissed at his costs.

"Whereupon, by consent and agreement of all of the parties hereto, the trustee, Louis Hoffman, defendant in this cause, is ordered and directed by the court to turn over to the plaintiff, Thomas B. Melvin, all the moneys, property and personal assets now in his hands and under his control as part of said trust and belonging to the trust estate, of every sort and kind, after deducting therefrom all of the costs and expenses of this proceeding, including attorneys' fees and such remuneration as the trustee is at present entitled to, and the trustee is directed by the court in due course to present to this court his settlement in accordance with this order, and to carry out the same in all respects.

"And by consent of all the parties present the trustee is directed to pay the attorney for the plaintiff an additional attorneys' fee of $250 and to pay to the attorneys for the defendants, Montgomery & Montgomery, an additional compensation in this cause in the sum of $250 out of the trust funds in his hands, and that the sum of $100 be paid by said trustee to Dimmitt Hoffman as his attorney for appearing and answering in this cause for him."

In the case in hand, the court below found for plaintiff, decreed that the trust created by said deed "is hereby revoked," the trust terminated; that the fee simple title is in plaintiff, and defendants have no rights therein.

Failing to obtain a new trial, defendants, Mrs. Thomson and Mrs. May, appealed to this court,

I.. As to *res adjudicata.* There are no allegations in the petition in the case now before us that said deed was procured by fraud or undue influence of any one, nor that plaintiff was weak-minded or in any way incapacitated when he made said deed. The only allegations in said petition, as grounds for setting aside or avoiding said deed in equity, are that plaintiff was not "advised that said instrument was irrevocable, but this plaintiff, at the time of executing said instrument, understood and intended that such instrument should and did create a revocable settlement." All of which grounds were conclusively adjudicated against plaintiff in the former suit. If plaintiff was of sound mind and knew and understood the purport, terms, contents and meaning of said instrument, when he made it, which was expressly within the issues and expressly found and decreed by said former judgment, then he was fully advised and knew that said deed purported to be and was an absolute, irrevocable conveyance. The finding of all the issues for defendants and decreeing "said deed and the trust thereby created in all respects sustained" in said former judgment, also adjudged that there was no undue influence practiced by defendants, or the husbands of plaintiff's sisters, in the procurement of said deed, because that was also one of the issues expressly alleged and involved in the pleadings in the former suit. Whether said deed was improvidently made by plaintiff, or the power of revocation omitted therefrom by mistake, was a matter also embraced within the issues made and decided in the former case, because, if plaintiff was of sound mind and fully competent to understand and did understand the purport and meaning of said deed when he made it, as the court held in said former cause, it could not have been improvidently made nor omit the power of revocation by mistake.

It is hardly necessary to cite authorities on the elementary proposition, that when an issue has once been decided by a court of competent jurisdiction in a former

Res Adjudicata.

Melvin v. Hoffman.

suit between the same parties, the losing party cannot vex his adversary again with the same issue or matter embraced therein. [Chouteau v. Gibson, 76 Mo. 38; Baker v. Kansas City, 147 Mo. 140; Wilson v. Boughton, 50 Mo. 17; Young v. Byrd, 124 Mo. 590.]

Furthermore, a former judgment is not only conclusive, as to matter in issue and embraced within the issue, but as to all matters which the parties could have alleged to sustain their action or defense. The former proceeding being a suit in equity to cancel, set aside and annul said deed, all matters which plaintiff could have alleged to set aside and cancel said deed in equity are deemed to have been adjudged in defendants' favor, whether alleged in the petition in said cause or not—for the reason, that a party cannot split up his cause of action nor vex his adversary piece-meal for the same cause more than once. [Donnell v. Wright, 147 Mo. 639, and cases cited; St. Louis v. United Rys., 263 Mo. l. c. 424 and cases cited; Spratt v. Early, 199 Mo. 491; Leslie v. Carter, 268 Mo. l. c. 428.]

We hold, therefore, that all equitable grounds for annulling, setting aside, or revoking said instrument urged by respondent in his petition, or in his brief, were determined against him in the former litigation, and are at rest.

II. We also think, that the validity of said deed and the trust thereby created was in all respects sustained as expressly declared therein by said former decree.

Joint and Several Answer.

In said former suit, the trustee and Mrs. Thomson and Mrs. May filed answers; they were on the same side of the controversy; their answers, though in form several, were in substance joint and several; each admitted the making of the deed and claimed its validity; each alleged that it had been carried out by the trustee and plaintiff had received the benefit of it since its execution. The trustee's answer alleged that it created in him a trust for the benefit of plaintiff and his sisters, and plaintiff's sisters' answer alleged it created a trust for

the, support of plaintiff for life under the supervision of the trustee. That they were entitled to have the validity of said deed and the rights of the parties thereunder determined by the court and expressly prayed that the court determine such rights, etc. We hold that in equity (especially under our code) in matters of pleading and procedure, as well as in other matters, the substance and not the form of things is regarded, and, accordingly, that both answers in the former case must be considered as a single pleading containing the joint and separate answer of the trustee and his co-defendants. As such, it was sufficient to sustain a decree, when collaterally attacked, as in this case, granting defendants affirmative relief and establishing the validity in all respects of said deed of trust. The fact that said decree did not fully define the rights of the parties, as prayed by defendants, does not prevent it being an adjudication of their rights, as far as it goes, to-wit, that ''said deed and the trust thereby created be in all respects sustained.'' That both the parties and the court understood the decree established the validity of the instrument, is further shown by its subsequent language. Immediately following the provision above quoted, it provides that by order of the court and consent of the parties (plaintiff, himself, being personally present) the personal property in the trust (which under the terms of the deed, the trustee was authorized to wholly appropriate for the support of plaintiff) was directed to be turned over to him, and the trustee to report his action thereunder to the court. There is, therefore, nothing left for further controversy except the particular estates or interests which the parties have under said deed considered as a valid instrument.

III. But, independently of the effect of said former judgment, as an affirmative adjudication of the validity of said deed, in all respects, at law and in equity, we have arrived at the conclusion that it is a
Revocation: Presumption. valid and legal instrument, and not subject to the objections made thereto by learned counsel for respondent.

Learned counsel contend that the deed, on its face, being a voluntary settlement and containing no power of revocation, the presumption is that it was omitted by mistake or said deed was improvidently executed. Several authorities holding such omission is prima-facie evidence of such mistake or improvidence are cited, but none so holding from this State. But such authorities would in no event rule this case, because the judgment in the former suit between the parties adjudicated such facts against the plaintiff. The question of mistake and improvidence is a matter of equity going to the validity of the execution of the deed, settled by the former judgment and does not affect the validity or construction of said deed on its face. At law and on its face, a voluntary deed or executed trust in favor of third parties is not revocable by the grantor, *unless such power of revocation is contained in the deed,* but is valid and binding, as if made for a full consideration. [27 Am. & Eng. Ency. Law (1 Ed.) p. 310, and cases cited in the notes; Perry on Trusts, sec. 104; In re Richard's Trust Estate, 97 Md. 608.] This has always been the law in this State. [Ewing v. Shannahan, 113 Mo. l. c. 196; Banking Co. v. Miller, 190 Mo. 640; McFarland v. Bishop, 222 S. W. 146; Leeper v. Taylor, 111 Mo. 312; Watson v. Payne, 143 Mo. App. l. c. 728; Taylor v. Welch, 168 Mo. App. l. c. 230.]

IV.  Respondent's learned counsel are also in error in their contention that said deed is not an executed trust in favor of plaintiff's sisters, because it does not provide that at the time mentioned in the deed the property shall go to them, but that the trustee shall convey it to them. At the outset, the property is conveyed absolutely in fee simple to the trustee upon the trusts and for the purposes thereafter named, among which is that of conveying it to plaintiff's sisters upon his death and that of his widow and children, if any he have, or when said children arrive at the age of twenty-one years. The plaintiff is not required to do anything further in

*Authorizing Trustee to Convey to Beneficiaries.*

order to effect the disposition of his property as contemplated by said deed. It was, therefore, a completely executed trust, and in no sense executory so as to remain revocable by him. [Ewing v. Shannahan, 113 Mo. l. c. 196, and other cases cited above.]

V. Nor is said instrument testamentary in character. It passes the absolute fee to the trustee by the usual words of conveyance of present import in trust for the purposes therein mentioned, and vests a present title and interest in the trustee and the beneficiaries, and takes immediate effect upon its delivery. There is no title left in the grantor whatever, except the right to support as therein provided. Such a deed has no earmarks of a testamentary disposition, and is invulnerable to attack for that reason. [Sims v. Brown, 252 Mo. 58.]

*Testamentary Deed.*

VI. Nor does said instrument in any way violate the rule against perpetuities. That rule is, that the legal or equitable fee in the estate must vest within a life or lives in being and twenty-one years and the period of gestation thereafter from the date the instrument takes effect. The rule does not apply to vested remainders, nor to contingent remainders which vest within said time. [Deacon v. Trust Co., 271 Mo. 669; Stevens v. Annex Realty Co., 173 Mo. 511; 21 R. C. L. pp. 290, 291, 297.]

*Perpetuity.*

In this case, we think, all the estates created vested within the required time.

(a) The complete legal title to the trustee took effect upon the delivery of the deed. So did the interest of plaintiff for support. The interests of his possible wife and children were contingent upon their being in existence at the time of plaintiff's death, but if they were then in existence, their estates took effect and vested at that time—that of the children to cease at their majority, that of the wife to cease at her death or marriage. Their estates therefore vested within the rule.

As to the sisters' remainder. So far as it was limited to take effect upon the death of the plaintiff and the death of the widow, it was a vested remainder, because said events were certain to occur and the sisters were living when the deed was made. In so far as it was limited to vest when plaintiff's children, if any, reached their majority, if the immediate clause in which it is stated the trustee shall then convey to them, is alone considered, it would be contingent, because the event, that of said children, if any, ever reaching majority, would be uncertain. [Eckle v. Ryland, 256 Mo. 1. c. 451 et seq.] But even in that case, the sisters' title would vest in equity within twenty-one years and the period of gestation after plaintiff's life had expired, which would be within the rule.

(b)   But, whether a remainder is vested or contingent depends upon the intention of the instrument, as shown by its four corners, and if doubtful, will be construed to be vested. [Chew v. Keller, 100 Mo. 362.]   If the remainder to the sisters be contingent upon his children, if any, reaching the age of majority, then if he had children and they all died before they reached their majority, the remainder to the sisters would fail and the fee would revert to the plaintiff or his heirs, because not otherwise disposed of by the deed. But we think, it was the clear intention of the deed to dispose of the whole fee simple title, so that it would vest in the beneficiaries within a life in being or twenty-one years and the period of gestation thereafter. This is shown by the express statement in the deed, that the trustee was vested with the fee simple title interest in trust for the purposes specified in the deed, and by the express statement, that the payments to plaintiff and his wife and children should "never be in such amounts as not to leave funds to pay all taxes," and *"to at all times leave the real estate or its proceeds intact and fully protected and preserved for the benefit of the remainderman hereafter mentioned."*

If the language had been to convey to the sisters, etc., upon the majority of the children, *"or upon their death*

290 Mo.—32

*before majority,"* there could be no doubt that the sisters' interest would be a vested remainder, because all the events upon which it depended would necessarily happen by the mere efflux of time. [Warne v. Sorge, 258 Mo. l. c. 171.] But, we think, that this omission is supplied by the other language of the deed above referred to showing an intention to dispose of the whole fee and that the estate should always be preserved for the remaindermen "hereafter mentioned" who are his sisters; also by the immediate context directing the conveyance to the sisters *"their heirs, executors, administrators and assigns."* This language shows their estate was to descend to their heirs and vest in their executors and administrators or in their assigns.

We rule, that the sisters' estate is a vested equitable remainder in fee.

VII. Respondent's learned counsel also contend that under the instrument the trustee in his discretion can withhold all income or rents and profits from the plaintiff and his widow and children, if he Income. should have any, and allow it to accumulate in his hands until the termination of the trust upon the death of said widow. That she might be a person yet unborn and whose death might be more than twenty-one years and the period of gestation after plaintiff's death. Therefore, such power of accumulation in the trustee contravenes the rule against perpetuities.

But, we do not so read the deed. Upon the plaintiff's death, leaving a widow or children, the trust is expressly limited to "continue for the use and benefit of the family of the party of the first part, if he leave any, during the widowhood of his wife, if he leave any, and of the minority of any child or children, if he leave any." Thus, plaintiff's widow and children, upon his death, are to have the *use and benefit* of the trust property without restriction or reservation, during the wife's widowhood, and the children's minority. This would give them the

whole net income of the property during the existence of
their estate.

The power to accumulate or withhold income ex-
pressly applies only to the plaintiff, and not to his widow
or children. Thus, there could be no accumulation of
income after plaintiff's death or beyond a life in being,
and the rule against perpetuities would not be infringed.

VIII. It is also contended that the written consent
of plaintiff and his sisters to sell, is only required in case
the trustee sells while plaintiff or his sisters or one of
them is living, and that in case they are all
dead, he trustee is given power to sell and

Reinvestment.

reinvest until the death of the widow, if any, which might
be beyond the lawful period. This, we think, is true.
But this power to sell and re-invest in no way disturbs
the vested interest of the beneficiaries, which, as we have
seen, would all vest in equity, and therefore be transfer-
able within the period required by said rule. Any change
or substitution of property by the trustee under the trust
would simply be the proceeds of the original trust prop-
erty, and the vested interest of the beneficiaries would
follow and continue in such proceeds or substituted prop-
erty and would be in no way disturbed by the change in
the character of the trust property. The power to lease,
sell and reinvest, instead of impeding, facilitates the
transfer of property, and is th' very purpose the rule
against perpetuities seeks to promote. [Deacon v. Trust
Co., 271 Mo. 669; re Estate of Soulard, 141 Mo. 642;
21 R. C. L. page 336; Holmes v. Walter, 118 Wis. 409, 62
L. R. A. 986; note to 11 L. R. A. 88; Pulitzer v. Living-
ston, 89 Me. 359; Hart v. Seymour, 147 Ill. 598.]

IX. We are, therefore, of the opinion, that said in-
strument is valid in all respects, as to the parties thereto
and the beneficiaries therein mentioned, and so hold.

We have also indicated the character of the estates
of the beneficiaries and powers of the trustee.

As to the plaintiff's right of support, we hold, that
it is wholly within the discretion of the trustee, except
under the circumstances mentioned in the deed, which

Grantor's Support.

provides when it must be withheld, but may be given to his family, if any he has. But, otherwise, the trustee is authorized to give all the net income of the trust property to the plaintiff during his life for his support (including that of his family, if any he should have), without regard to whether the plaintiff has sufficient other property or means or needs such net income for his and their support or not. Also in his discretion out of said net income to erect, if not already erected, or in case they be destroyed hereafter, such buildings as may be necessary upon said land for the comfortable use and occupancy of the plaintiff, and if he have a family, for plaintiff and his family, without regard to whether plaintiff has other houses or property which he could use for his dwelling or not. By net income is meant all the income remaining after paying the expenses of the trust and operating the property thereunder, including compensation to the trustee, and reasonable attorneys' fees of himself and his codefendants in defending this suit, or other litigation to which he may be a party as trustee, taxes, insurance, ordinary repairs and all other necessary expenses incurred as such trustee in order to preserve the *corpus* of the trust property intact for the remaindermen as provided for in said deed.

The result is, that the judgment of the lower court is reversed, and the cause remanded, with directions to said court to set aside said judgment, and enter a decree finding all the issues for defendants, and declaring and adjudging said deed of trust and provisions therein legal and valid in all respects law and equity, and binding upon the parties thereto, and that the rights of the parties to this suit, and the beneficiaries in said instrument mentioned, including the powers and duties of the trustee, are as therein provided and set forth and as construed and indicated by our opinion herein. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by Small, C., is adopted as the opinion of the court. All of the judges concur, *David E. Blair, J.,* in paragraphs 1 and 2, and the result, and except *Woodson, J.,* who dissents.