**Sam D. INGELS and Harold D. Ingels, Appellants,**

v.

**CITIZENS STATE BANK and James Cline, Respondents.**

**No. WD 31879.**

Missouri Court of Appeals, Western District.

Feb. 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1982.

Application to Transfer Denied May 17, 1982.

Joseph A. Sherman and Gwen G. Caranchini, Kansas City, for appellants; Jackson & Sherman, Kansas City, of counsel.

Frank Thackery, St. Joseph and Frank H. Strong, Maryville, for Citizens State Bank; Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, and Strong, Strong & Prokes, Maryville, of counsel.

Harold L. Miller, Maysville, for James Cline; Robison & Miller, Maysville, of counsel.

Before TURNAGE, P. J., PRITCHARD and CLARK, JJ.

PRITCHARD, Judge.

Plaintiffs, owners of real estate known as Thunderbird Mobile Home Estates south of Maryville, Missouri, began this suit in six counts against the Citizens State Bank and its president, James Cline, arising out of an alleged suretyship agreement by which Citizens, through Cline, agreed to "be responsible for policing and seeing that the Turnpaco corporation, the contractor on Sam Ingels', et al., mobile home park, pays all the bills and secures all the mechanic's lien certificates to protect your institution as well as the Citizens State Bank. * * *." The claim for damages in each count was for $264,841.41. The first count sought to set up the suretyship agreement as a basis for recovery; the second count was on the basis of "detrimental reliance" on Citizens' promise to be responsible for policing and seeing that Turnpaco's obligations were paid, although it knew that it was precluded from acting as a guarantor or surety on a bond by § 392.150 (actually § 362.105), RSMo 1969; Count II set up that defendants were estopped to claim that a promise was not made to plaintiffs because of their "detrimental reliance"; Count III set up also detrimental reliance on the alleged promise and estoppel of defendants to claim otherwise because plaintiffs did not, in reliance, secure the services of a contractor who could (or would) obtain a contractor's bond or require Turnpaco to secure the customary contractor's bond; Count IV is based upon defendants' alleged false representations that they would stand in the place of a "surety"; Count V was for malicious false representations for which $250,000.00 damages was prayed; and Count VI was

grounded upon defendants' negligence in failing to require Turnpaco to live up to the covenants and conditions of its contract with plaintiffs and thus failing to protect their interests. Each of these counts incorporate the allegations of Count I which alleges the existence of a surety agreement running to the Ingels as third party beneficiaries.

It should be mentioned that this case originally arose in 1974 out of a claim by Advance Concrete and Asphalt Co., against Turnpaco, the Ingels and the First Federal Savings and Loan Association of St. Joseph for money due on account and to foreclose a mechanic's lien. The Citizens State Bank was brought in and a cross-claim was filed against it for indemnity by the Ingels on its alleged bond to save them harmless. Sam Ingels, in that case, separately filed a counterclaim against Turnpaco and Citizens (as alleged surety).

On January 20, 1975, Citizens moved to dismiss the Ingels' cross-claim and Sam Ingels' counterclaim upon the ground that a letter addressed to First Federal Savings and Loan Association from Citizens, signed by its president, Cline, fails on its face as a matter of law to constitute a bond or a surety contract or commitment, or if it did "it would not, on its face, as a matter of law, constitute a contract or committment enforceable by or on behalf of any person other than Defendant, First Federal, and particularly would not constitute any contract or undertaking for the benefit of Defendant, Third Party Plaintiffs, Ingels." The letter, dated November 8, 1972, to First Federal, a copy of which was attached to and incorporated in the motion to dismiss, is: "The Citizens State Bank will be responsible for policing and seeing that the TurnPaCo Corporation, the contractor on the Sam Ingels, et al. Mobile home park, pays all the bills and secures all the mechanics lien certificates to protect your institution as well as the Citizens State Bank." Suggestions in support of and in opposition to the motion to dismiss, with citation of authorities, were filed by the parties, and the issue was joined as to whether or not the

letter was capable of being construed to be a surety contract, and whether, if so, it ran to the Ingels as third party beneficiaries.

On April 14, 1975, the trial court heard the oral arguments of counsel and considered their briefs, and held, citing *Stephens v. Great Southern Savings & Loan Association*, 421 S.W.2d 332 (Mo.App.1967), that the "Ingels as owners are not entitled to maintain an action on such contract between Citizens State Bank and First Federal Savings and Loan Association, as Third Party beneficiaries, but are only incidental beneficiaries, not entitled to maintain an action upon such Contract." Citizens' motion to dismiss was sustained and a final judgment was entered in its favor. On April 22, 1975, Sam Ingels filed an application to amend his counterclaim in designated respects, which appear to be based upon the same theory as his original one—that he was a third party beneficiary of Citizens surety agreement with First Federal. The trial court never did rule the motion to amend.

Then, on April 29, 1975, the trial court entered its first amended order of dismissal, setting aside the April 14, 1975, order, and again dismissed the cross-claim and counterclaim of the Ingels (for the same reasons mentioned in the original order), and reserved Sam Ingels' counterclaim against Turnpaco. No notice of appeal was ever filed on either of these orders of dismissal.

The trial court here gave judgment to defendants upon multiple theories: (1) That the action was barred because of the prior, April 29, 1975, adjudication of dismissal with prejudice which barred plaintiffs' claims under the theory or theories of res judicata, estoppel by verdict or estoppel by judgment; (2) That claim based upon a principal-surety relationship was barred because plaintiffs in September, 1978, released the principal, Turnpaco, which had the effect of releasing defendants on all claims; and (3) Failure to state a cause of action in any of the six counts—Counts I, II and III, plaintiffs are mere incidental beneficiaries, and the alleged promises (of Citizens) are ultra vires; Counts IV and V,

plaintiffs do not properly state a cause of action because a right to rely on illegal promises or the performance of illegal acts would be against public policy; they did not plead misrepresentations of existing facts or an exception to the necessity therefor; and that the attempt to plead under a negligence theory the creation of a duty to perform illegal, unenforceable, ultra vires and forbidden acts, which fail to state a cause of action. The dispositive question is limited to that of whether the presently asserted cause of action is barred by res judicata or estoppel by judgment, and that question must be answered in the affirmative. Since that one ground is sufficient to sustain the trial court's judgment, the others need not be considered. See *Dickson v. Dickson*, 591 S.W.2d 267, 270[2] (Mo.App. 1979), and cases cited.

■ Whether this case falls within the traditional res judicata, which prohibits the same parties from relitigating the same issue of action, or whether it falls within a second distinction called issue preclusion, more commonly referred to as collateral estoppel, which precludes the same parties from relitigating issues previously adjudicated, is of no moment. The four concurring elements to support traditional res judicata listed in *Peoples-Home Life Ins. Co. v. Haake*, 604 S.W.2d 1, 7[5] (Mo.App.1980), are here present: The identity of the thing sued for (here a claim of recovery based upon a principal-surety agreement, present in the prior litigation and ruled adversely to plaintiffs on the holding that they were mere incidental beneficiaries); the cause of action is for the same reason identical; the parties are the same; and their quality is the same. Clearly, the merits of the previous claim were reached on the motion to dismiss and the evidence thereon, the alleged principal-surety agreement was before the court, held to not extend to incidental beneficiaries. The latter element was established in the prior litigation as a matter of law on the merits of the claim of plaintiffs, and was ruled against them. They may not now relitigate it and the trial court was correct in so ruling. See also

*Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979).

In their suggestions in opposition to the 1975 motion to dismiss, the Ingels contended that they were entitled to present evidence of surrounding circumstances, if the contents of Citizens' letter to First Federal did not conclusively establish it as a surety contract, to aid the court in construing it. Quite apparently, the Ingels never did request an opportunity to present such evidence within the time that the trial court had control of the judgment of dismissal, but permitted it to become final without an appeal. An appeal at the time might have resolved any question as to whether parol evidence was admissible and necessary to construe the letter, but that was never pursued. The Ingels now claim that they did not have a "full and fair opportunity to litigate the issues", that the court did not receive into evidence any facts relating to the claim of the parties, but the hearing was relegated solely to the legal issues of whether the Ingels stated a cause of action on a principal-surety relationship or a third party beneficiary theory, and thus the doctrines of res judicata, estoppel by verdict and estoppel by judgment do not bar their present petition for damages. The matter originally before the trial court was on the merits of the Ingels' claim, and if the trial court was in error in entering judgment thereon, it was not sought to be corrected on appeal, but was allowed to stand. *The Peoples-Home Life Ins. Co.* case is of no aid to the Ingels, for it held merely that summary judgment imposed as a sanction for failure to comply with discovery procedures was not an adjudication upon the merits of minor defendants' claims. *Denny v. Mathieu*, 452 S.W.2d 114 (Mo. banc 1970), held only that a dismissal with prejudice as to a servant did not adjudicate the issue of master's liability. Here, since there has been an adjudication on the merits, and an opportunity fully to litigate the issues, if the theories of promissory estoppel, fraudulent misrepresentation, are different than the original claim that the Ingels were third party beneficiaries (although, as noted, they are based upon the claimed principal-surety

agreement), the Ingels are now precluded from litigating them by the doctrine of estoppel by judgment in that they are matters which could have been alleged in the prior action. *St. Bethel Missionary Baptist Church, Inc. v. St. Louis Builders, Inc.*, 388 S.W.2d 776, 779 (Mo.1965); *Munday v. Thielecke*, 483 S.W.2d 679, 681, 682 (Mo.App. 1972); and *Butler v. Manley*, 416 S.W.2d 680, 682 (Mo.App.1967).

The judgment is affirmed.

All concur.

### On Motion For Rehearing

PER CURIAM:

In their motion for rehearing appellants say that the foregoing opinion is in error in applying the doctrine of estoppel by judgment because the parties in the prior action are not the same as in the presently asserted action, i.e. that James Cline, the president of Citizens State Bank, was a stranger to the prior litigation. The argument ignores the fact running through all the pleadings that Cline was the servant or agent of Citizens, acting within the scope of his employment, and that the doctrine of respondeat superior applies as between him and Citizens. In the early case of *McGinnis v. Chicago, R.I. & P. Ry.*, 200 Mo. 347, 98 S.W. 590, 594 (1906), it is said, " * * * [I]t is generally held that, where the action is one involving the doctrine of respondeat superior, a judgment in separate actions acquitting the servant bars the action against the master and *vice versa*." [Italics added.] See, analogously, 46 Am.Jur.2d Judgments, § 570, p. 730, 731, "And where a judgment is in favor of the principal, the judgment is res judicata in an action against the agent, a derivative responsibility being present"; and the following Section 571, "Similarly, where suit is brought against an employer for the alleged wrong of an employee, it is held that a judgment on the merits for the employer bars an action against the employee, at least where it is conceded in the first action that the employee was acting within the scope of his employment." See also *Ted Saum and Company v. Sawffar*,

237 Ark. 971, 377 S.W.2d 606–607[1–3] (1964), and cases and authority there cited, including 50 C.J.S. Judgments § 757, p. 277; and *Hammonds v. Holmes,* 543 S.W.2d 20 (Tex.Civ.App.1976), holding that a judgment in favor of a bank in a wrongful foreclosure action barred a second action against the bank's employees, its officers, agents and servants.

The motion for rehearing is overruled and the application to transfer to the Supreme Court is denied.