L.L. BARKLEY and Marguerite Barkley, his wife, Plaintiffs–Appellants,

v.

CARTER COUNTY STATE BANK, Jeff Featherston, individually and as president of Carter County State Bank, Claude Kennedy and Gertie Kennedy, his wife, Defendants–Respondents.

No. 16449.

Missouri Court of Appeals, Southern District, Division Two.

June 18, 1990.

Mark A. Kennedy, Kennedy & Kennedy, Poplar Bluff, for plaintiffs-appellants.

L. Joe Scott, Daniel T. Moore, Poplar Bluff, for defendants-respondents.

FLANIGAN, Presiding Judge.

On August 30, 1988, plaintiffs L.L. Barkley and Marguerite Barkley filed this action in the Circuit Court of Oregon County against defendants Carter County State Bank ("the bank"), Jeff Featherston, Claude Kennedy, and Gertie Kennedy, his wife. Featherston was sued individually and as president of the bank. The bank and Featherston filed a motion for summary judgment. Rule 74.04.[1] Claude Kennedy and Gertie Kennedy filed a separate motion for summary judgment. The trial court sustained both motions. Plaintiffs appeal.

The judgment recited that the motion of the bank and Featherston was sustained on the ground that a judgment entered on May 15, 1984, in Case No. CV–584–26CC, Circuit Court of Oregon County, L.L. Barkley and Marguerite B. Barkley, his wife, Plaintiffs, vs. L. Joe Scott, Trustee for Carter County State Bank, and Carter County State Bank, Defendants, "is a final judgment and is res judicata as to and bars the issues pled in plaintiffs' petition against said defendants herein." Case No. CV–584–26CC will be called "the first action," and the judgment of May 15, 1984, will be called "the first judgment."

The court also found "that plaintiffs do not have any right, title or interest in and to the real estate described in [the first judgment] and have no right to possession thereof and are not entitled to their prayer for judgment and damages against defendants Claude Kennedy and Gertie Kennedy, either actual or punitive."

Plaintiffs' sole point is that the trial court erred in sustaining the two motions for summary judgment and in dismissing the action because the present action is not barred by the doctrines of res judicata or collateral estoppel in that: (a) there was never a final adjudication of the first action on its merits; (b) the first action and this action do not have identity of issues; (c) the first action and this action do not have identical parties; and (d) plaintiffs did not have a full and fair opportunity to litigate in the first action all of the issues presented in the present action.

"On review of defendants' motion for summary judgment, this Court must view the record in the light most favorable to the plaintiffs, according to plaintiffs all reasonable inferences which may be drawn from the evidence. Summary judgment is inappropriate unless the defendants have shown by unassailable proof that they are entitled to judgment as a matter of law. The burden is on the defendants to demonstrate that there are no genuine issues of material fact. A genuine issue of fact exists when there is the slightest doubt about a fact."

*Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59, 61 (Mo. banc 1988).

It is necessary to examine the record in the first action in order to determine what effect its outcome may have had upon the respective defendants in this action.

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

## The First Action

On March 15, 1984, plaintiffs L.L. Barkley and Marguerite Barkley filed civil action No. CV–584–26CC in the Circuit Court of Oregon County against the bank and L. Joe Scott, trustee for the bank.

The petition alleged: On September 9, 1983, plaintiffs executed a note and deed of trust in favor of the bank. The note was in the amount of $141,803.98, and of that amount the bank disbursed "money to plaintiffs but withheld approximately $51,-000." Plaintiffs did not receive full consideration for the deed of trust because of that withholding. On February 23, 1984, defendant Scott, as trustee, published a notice of a foreclosure sale to be held on March 16, 1984, of the land described in the deed of trust. Scott was not the trustee named in the deed of trust and had no authority to act as trustee.

The petition prayed that the court issue its order "temporarily restraining and preliminary (sic) enjoining defendant (sic) from proceeding with a trustee's sale under the ... deed of trust."

Also on March 15, 1984, plaintiffs filed a "Motion for Temporary Restraining Order," seeking to enjoin the defendants from conducting the foreclosure sale scheduled for March 16, 1984.

Also on March 15, 1984, the court issued a temporary restraining order stopping the foreclosure sale.

On May 7, 1984, the court held an evidentiary hearing on "plaintiffs' request for a permanent injunction."

On May 15, 1984, the court entered judgment finding the issues in favor of the defendants and against plaintiffs Barkley. An excerpt from the judgment reads: "After having heard testimony pursuant to plaintiff's (sic) request for a permanent injunction, said evidence being heard on May 7, 1984, [the court] hereby finds that plaintiffs executed a promissory note and deed of trust to secure said promissory note and are presently in default on said promissory note. The court further finds that plaintiff (sic) has failed to meet their burden of proof in sustaining their allegations as to the purpose for which an injunction should be made permanent."

The judgment dissolved the temporary restraining order, denied plaintiffs' request for a permanent injunction, awarded defendants damages in the amount of $1,229 against the plaintiffs and their surety, and taxed the costs against plaintiffs.[2]

## The Present Action

On August 30, 1988, a three-count petition was filed by plaintiffs L.L. Barkley and Marguerite Barkley, who are the same persons who were plaintiffs in the first action. The four defendants are the bank, Jeff Featherston (individually and as president of the bank), Claude Kennedy and Gertie Kennedy, his wife.

Count I of the petition, directed against all four defendants, alleged in general:

The Kennedys are presently in possession of 440 acres of certain described real estate located in Oregon County, and they purport to be owners of the land pursuant to a warranty deed from the bank dated August 24, 1987. On September 9, 1983, plaintiffs were in possession of the real estate and on that date gave a deed of trust on it to one Reed as trustee for the bank.[3] On February 13, 1984, L. Joe Scott, purporting to act as trustee, caused a notice of foreclosure sale to be mailed to the plaintiffs advising them of a foreclosure sale to be held on March 16, 1984. Scott, purporting to act as trustee, later notified plaintiffs of a foreclosure sale to be held on June 22, 1984. On March 13, 1985, the bank, through defendant Featherston, appointed Scott as trustee of the deed of trust "in direct contravention of the terms of the deed of trust." On April 12, 1985, Scott, purporting to act as successor trustee, sold the land to the bank and gave the

---

**2.** The judgment of May 15, 1984, was final and appealable by plaintiffs. *Hagen v. Bank of Piedmont,* 763 S.W.2d 384, 385[2] (Mo.App.1989).

**3.** The deed of trust of September 9, 1983, the land described in the deed of trust, and the promissory note are the same as those involved in the first action.

bank a trustee's deed purporting to transfer ownership of the land to the bank. The trustee's deed is void under Missouri law. On August 24, 1987, the bank, by warranty deed, purported to transfer title to the land to the Kennedys, who thereupon entered into unlawful possession of plaintiffs' land and who continue to withhold possession from plaintiffs.

The prayer of Count I was that the court declare that "the foreclosure of the deed of trust" was illegal and the trustee's deed of April 12, 1985, was a nullity, that the deed transferred no interest in the land to any subsequent purchaser, and that the "transactions regarding" the land after April 12, 1985, are void and should be set aside. The prayer also requested that the court issue to the sheriff a writ of possession ejecting the Kennedys from the land and placing plaintiffs in possession.

Count II, which was directed against all four defendants, incorporated the allegations of Count I and further alleged: As a result of the wrongful taking and withholding of the land, plaintiffs have been deprived of rents and profits since April 12, 1985, to their damage in the amount of $250,000. All actions taken by the bank, Featherston, and Claude Kennedy, were willful, wanton and malicious. Prior to the foreclosure sale, Featherston was employed by the Missouri Department of Finance as a bank examiner, and he examined and classified the "plaintiffs' loans." Pursuant to the classification of the loans, the value of the bank "was depleted" and the bank was sold and Featherston was hired as executive vice president of the bank. As executive vice president Featherston proceeded to foreclose deeds of trust securing loans which he had classified as a bank examiner. Thereafter the land was sold to the bank pursuant to an illegal foreclosure and sold to individuals (sic) on the board of the bank. At the time the Kennedys purchased the property, Claude Kennedy was serving on the board of the bank and purchased the land for "a small percentage of its fair market value," and such purchase was approved by the board of the bank and by Featherston as president of the bank.

The prayer of Count II was for actual damages in the amount of $250,000 against all defendants and for punitive damages "in an amount adequate to sufficiently punish the defendants and deter them and others from like conduct," and for other relief.

Count III, directed against the bank and defendant Featherston "as president of [the bank]," alleged: On September 9, 1983, the plaintiffs were in possession of 440 acres of land in Oregon County and on that date gave a deed of trust to one Reed as trustee for the bank. Also on September 9, 1983, the plaintiffs "in order to secure future advances and secure a line of credit" gave the bank "a deed of trust securing future advances." The amount of the deed of trust for future advances was $141,803.98, and in addition to the land the plaintiffs pledged 35 head of mixed cattle as additional security for the line of credit.

The deed of trust is governed by § 443.055, which provides that if collateral is given in connection with a deed of trust for future advances, the said deed of trust for future advances may only be terminated upon fulfillment of the obligation of the parties as set out in subds. 7 and 9 of [the statute] and further provides that said future advances instruments may not be terminated at all if they are for business or agricultural purposes.

The bank, in violation of state law, refused to honor the line of credit which had been established by plaintiffs in the amount of $141,803.98, and with no notice to plaintiffs and in violation of state law, terminated plaintiffs' line of credit on December 30, 1983, after only $89,335 had been disbursed on the line of credit. As a result, plaintiffs have been left destitute and suffered psychological damage and have lost income.

As a result of the wrongful acts of the bank, plaintiffs have suffered actual damages in the amount of $3,000,000. The acts of the bank were willful, wanton and malicious and in violation of the fiduciary relationship between the bank and plaintiffs, and plaintiffs are entitled to punitive damages.

The prayer was for $3,000,000 actual damages against the bank and "for punitive damages in an amount adequate to sufficiently punish the defendants and deter them and others from like conduct."

### Propriety of the Ruling With Respect to the Bank

The bank's motion for summary judgment, which the trial court sustained, described the proceedings in the first action, attached a copy of the petition and the judgment filed in the first action, and stated that all "matters, things and allegations" contained in the petition filed in the instant action were adjudicated against the plaintiffs in the first action and "the matter is res judicata."

For the reasons which follow, this court holds that the trial court properly sustained the bank's motion for summary judgment because the judgment in the first action was res judicata of the matters sought to be raised against the bank in the present action.

"[T]he doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." 46 Am.Jur.2d, Judgments, § 394, pp. 558–559.

"Generally, in order to have estoppel by a former judgment (res adjudicata), there must be: (1) Identity of the thing sued for;[4] (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." *Norval v. Whitesell,* 605 S.W.2d 789, 790 (Mo. banc 1980). "The phrase 'quality of the person' apparently refers to the status in which he sues or is sued." *Lewis v. Barnes Hosp.,* 685 S.W.2d 591, 594 fn. 1 (Mo.App.1985). With regard to element (4), later opinions of the court of appeals have used this wording: "(4) identity of the status in which the persons sue or are sued." *Berwald v. Ratliff,* 782 S.W.2d 709, 711 (Mo.App.1989); *Arana v. Koerner,* 735 S.W.2d 729, 733[1] (Mo.App.1987).

"A former adjudication on the same cause of action between the same parties is conclusive in subsequent proceedings as to every issue of fact which was or might have been litigated in the first proceed-

**4.** The Barkleys make no claim that element (1) —identity of the thing sued for—is not present. Although that element has been set forth in many Missouri cases, e.g., *Prentzler v. Schneider,* 411 S.W.2d 135, 138 (Mo. banc 1966); *Rossi v. Davis,* 345 Mo. 362, 133 S.W.2d 363, 373 (1939), this court has found no discussion by a Missouri appellate court of the meaning of element (1). "The four identities" for res judicata, quoted in *Norval v. Whitesell,* 605 S.W.2d 789, 790 (Mo. banc 1980), and set forth above, are also found in 2 Black on Judgments, § 610 (2d ed. 1902). There element (1), identity in the thing sued for, is alternatively stated as "subject matter of the suit." Element (2) is "identity of the cause of action." With regard to those two elements, that text says:

"[T]he decisions exhibit considerable doubt and ambiguity. This arises, in part at least, from a failure to observe properly the very important distinction already pointed out, between the case of a judgment offered as evidence of some particular question which was adjudicated in a former controversy, and the case where a judgment is set up as a bar to the maintenance of the action or as a merger of the cause of action. In the latter case, it is

undoubtedly correct to say that there must be an identity of the subject-matter, for it is precisely because the cause of action is the same that it cannot be tried a second time. But it often happens that some one point (such as the employment of an agent) may be put in issue in two suits between the same parties, in which, nevertheless, the causes of action are as widely different as it is possible to imagine them; and the first judgment will be held conclusive of that point in the second suit. It is therefore necessary to amend the statement of what is requisite to the rule of res judicata in order to adapt it to the case of a judgment produced as evidence of a particular proposition, which is the subject of the present chapter. Instead of the first two 'identities' above mentioned, we propose, for the present purpose, to substitute the following: There must be an identity of issues. And by this is meant that the issue raised in the second suit, upon which the evidential force of the former judgment is to be directed, must be identical with the issue (or one of the issues) raised and determined in the first action."

The foregoing language in effect predicts the development of collateral estoppel as an adjunct to res judicata.

ing.... Furthermore, a former judgment is not only conclusive as to matters in issue and embraced within the issue, but as to all matters which the parties could have alleged to sustain their action or defense." *St. Bethel Missionary Baptist Church v. St. Louis Builders, Inc.*, 388 S.W.2d 776, 779 (Mo.1965). To similar effect see *Melvin v. Hoffman*, 290 Mo. 464, 235 S.W. 107, 114 (banc 1921); *Huska v. Huska*, 721 S.W.2d 120, 121 (Mo.App.1986); *Siesta Manor, Inc. v. Community Federal*, 716 S.W.2d 835, 839 (Mo.App.1986); *Moore v. Beck*, 664 S.W.2d 15, 18 (Mo.App.1984). "Litigants are to be held bound to set out all reasons which they deem to exist for any relief they may consider themselves entitled to; they ought not to be permitted to take two or three bites to an equitable cherry any more than at a law cherry." *St. Bethel Missionary Baptist Church v. St. Louis Builders, Inc., supra*, 388 S.W.2d at 780.

In *Am. Polled Hereford v. City of Kansas City*, 626 S.W.2d 237 (Mo.1982), the supreme court discussed a distinction between res judicata and the kindred doctrine of collateral estoppel. At 241[3, 4] the court said:

> "Traditionally, res judicata (claim preclusion) precludes the same parties or their privities (sic) from relitigating the same cause of action whereas collateral estoppel (issue preclusion) precludes the same parties or those in privity from relitigating issues which have been previously litigated. *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713 (Mo. banc 1979).... A critical distinction is made between claim preclusion and issue preclusion: Where the question is one of issue preclusion the established rule is that the judgment in the prior adjudication operates only as to the issues, points, or questions actually litigated and determined and not as to matters not litigated in the former action even though such matters might properly have been determined therein. *Schmitt v. Pierce*, 379 S.W.2d 548 (Mo.1964); 46 Am.Jur.2d Judgments, § 418 (1969)."

Plaintiffs' sole point, previously stated, makes no attempt to differentiate between the doctrines of res judicata and collateral estoppel. The point also fails to draw any distinction between the respective situations of each of the four defendants so far as either of those doctrines is concerned.

■ Plaintiffs first assert that there never was a final adjudication of the first action on its merits. As noted earlier, the judgment of May 15, 1984, was final and appealable. Plaintiffs base their argument primarily on language in *State v. Brown*, 224 Mo.App. 1197, 31 S.W.2d 215 (1930). In *Brown* the first proceeding, an injunction action, was held not to have res judicata impact on the second proceeding which was a proceeding in mandamus. The mandamus action was not brought by the same parties who brought the injunction action. The injunction action was dismissed, but there was "no conclusive proof [in the mandamus action] that the adjudication in the injunction suit disposed of the merits of the case." *Brown*, 31 S.W.2d at 216.

Plaintiffs rely on the following language found in *Brown*, 31 S.W.2d at 217: "Where the court merely refuses an injunction in the exercise of its judicial discretion, such action cannot be taken as an adjudication of the merits of the case and is not res adjudicata as to these questions."

For two reasons this court is of the opinion that the foregoing language in *Brown* is no longer a proper statement of the law. First, Rule 67.03 provides, in pertinent part: "A dismissal with prejudice bars the assertion of the same cause of action or claim against the same party." Under other portions of Rule 67.03, the order of dismissal in *Brown* would now be a dismissal with prejudice because the court in its order for dismissal did not otherwise specify.

The second reason is that *Brown* is out of step with the theme of the Missouri Rules of Civil Procedure and federal decisions construing counterpart federal rules. A distinguished authority on federal procedure has said:

> "The merger of law and equity into a single civil action provides the most dramatic demonstration of the impact of pro-

cedural reform on claim preclusion. Merger makes it possible to join in a single action requests for relief that previously could not be brought together at all, or that could have been brought together only by sacrificing significant procedural rights. Claim preclusion requires what merger has made possible. Demands for equitable and legal remedies on a single claim or cause of action must be advanced in the first action or lost.... Several federal cases reflect the broad proposition that a suit for injunctive relief precludes a second suit on the same cause of action for damages ..."

Wright, Miller & Cooper, Fed.Prac. and Proc.: Jurisdiction § 4410, pp. 82–84.

Federal cases support the principle that a final judgment in an injunction action will bar a subsequent action at law on the same cause of action, or vice versa, under the res judicata doctrine. *Estate of Young v. Williams*, 810 F.2d 363 (2d Cir.1987); *Falls Stamping & Welding v. Intern. Union, UAW*, 744 F.2d 521 (6th Cir.1984); *Hagee v. City of Evanston*, 729 F.2d 510 (7th Cir.1984); *Mirin v. State of Nev., ex rel. Public Service Com'n*, 547 F.2d 91 (9th Cir.1976); *Clarke v. Redeker*, 406 F.2d 883 (8th Cir.1969).

Missouri cases are in accord. When a prior judgment satisfies the elements of res judicata, "[I]t is immaterial whether the judgment was at law or in equity." *Shay v. New York Life Ins. Co.*, 354 Mo. 920, 192 S.W.2d 421, 427 (1946). 50 C.J.S. Judgments § 609, p. 32. A decree in equity was res judicata in a subsequent action at law in the following cases: *Shay v. New York Life Ins. Co.*, 354 Mo. 920, 192 S.W.2d 421 (1946); *Barnett v. Smart*, 158 Mo. 167, 59 S.W. 235 (1900); and *Smith v. Francis*, 216 Mo.App. 293, 264 S.W. 77 (1924).

■ Was the cause of action asserted by the Barkleys against the bank in the first action the same cause of action asserted by the Barkleys against the bank in the second action? In *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10[1, 2] (1948), our supreme court said:

"The tests for determining whether a cause of action is single and cannot be split, have been said to be: (1) whether separate actions brought thereon arise out of the same 'act, contract or transaction'; (2) or, whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. Our decisions have pretty generally employed the first of these tests, and use one or more of the words 'act': 'contract' or 'transaction'. And our Civil Code, itself, now and in the past, has used the word 'transaction' as stating the basis of a cause of action, or claim, or counterclaim.

But the phrase 'cause of action' and the word 'transaction' both have broad meanings. The former does not refer to the *form* of action in which the claim is asserted, but to the *cause for* action, i.e., the underlying facts combined with the law giving the party a *right* to a remedy of one form or another based thereon. And the latter word ('transaction') has an even broader meaning. It has been defined as including the aggregate of all the circumstances which constitute the foundation for a claim, counterclaim, etc." (Emphasis in original.)

The first action arose out of the dealings on September 9, 1983, between the Barkleys and the bank involving the giving of the note and the deed of trust and the disbursement of some, but not all, of the loan proceeds. It also dealt with the bank's exercise of its foreclosure rights as holder of the deed of trust and the authority of the successor trustee. That action was filed on March 15, 1984.

In the second action the Barkleys seek money damages from the bank on allegations involving the September 9, 1983 documents and the exercise of foreclosure rights under the same deed of trust. They allege that the land was wrongfully taken by reason of the improper foreclosure. There is an additional allegation that the withholding of the loan proceeds violated § 443.055 and that the violation took place on December 30, 1983, which was prior to the institution of the first action.

It is true that the petition in the second action alleges a violation of § 443.055 and no such allegation was made in the first action. The cause of action was the same in both actions and the injection of the statute in the second action was merely an attempt to add a new theory or ground on which the same cause of action was being advanced. See Restatement (Second) of Judgments § 25(d), pp. 212–213. Illustration 9, cited there, reads:

"The trustee in bankruptcy of A Co. commences an action against B Co. charging that B Co., in order to destroy A Co. as a competitor, acquired the controlling stock interest in A Co. and manipulated its affairs so that it was forced into bankruptcy. This action is brought in a federal court under section 7 of the Clayton Act, and judgment is rendered for the defendant because the trustee fails to establish the necessary elements of a violation of that statute. The trustee is precluded from a second action against B Co. charging substantially the same acts but as part of a conspiracy under sections 1 and 2 of the Sherman Act."

In *Siesta Manor, Inc. v. Community Federal*, 716 S.W.2d 835, 839[12] (Mo.App. 1986), the court said:

"Separate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.' Restatement of Judgment 2d § 24 comment c."

There is no merit to the Barkleys' contention that the first action and this action do not have identity of issues.

This court holds that the matters sought to be asserted in the second action against the bank are the same cause of action which was asserted in the first action. The underlying facts—the loan arrangements (including the note and deed of trust), the disbursement of some but not all of the loan proceeds, and the exercise of foreclosure rights through the successor trustee—for which the Barkleys sought injunctive relief in the first action are the same underlying facts for which they seek monetary damages in the second action. The first action and the second action arise out of the same transaction. Element (2) of res judicata—identity of the cause of action—is satisfied. See *Medina v. Wood River Pipeline Co.*, 809 F.2d 531, 533[1, 2] (8th Cir.1987).

■ Element (3)—identity of the persons and parties to the action—is satisfied. The Barkleys were plaintiffs and the bank was a defendant in both actions. "All that is required to find identity of parties is a finding that the present plaintiff was a plaintiff in the first suit and the present defendant was a defendant in the first suit." *Vandever v. Jr. Coll. Dist. of Kansas City*, 708 S.W.2d 711, 715[4] (Mo.App. 1986).

The fact that the first action involved a defendant who was not a party in the second action and the fact that the second action has three additional defendants not sued in the first action do not deprive the bank of its defense of res judicata. "[O]ne who has had his day in court may not reopen the identical issues by merely adding new parties who are unnecessary to the determination of those issues." *Reis v. LaPresto*, 324 S.W.2d 648, 653 (Mo.1959).

■ Element (4)—identity of the quality of the person for or against whom the claim is made—is present. The "quality" of the bank, that is the status in which it was sued, is the same in both actions. It was not, for example, sued in one action as an administrator, and in another action merely in its corporate capacity.

■ The "four unities" of res judicata are present. Plaintiffs' point, however, contains prong (d) which reads: "Plaintiffs did not have a full and fair opportunity to litigate in the first action all of the issues presented in the present action." This prong has no significance. In advancing it, plaintiffs confuse the doctrines of res judicata and collateral estoppel.

In *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979), the

court listed three factors and a possible fourth factor which a court should consider in determining whether to apply the doctrine of collateral estoppel. The first three factors are: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

The court also said: "Most courts have added a fourth factor to the three enunciated by Chief Justice Traynor in the Bernhard case: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." [5]

This court has held that the bank is entitled to the benefit of res judicata and not merely collateral estoppel. It is unnecessary to discuss prong (d) of the Barkleys' point which is a factor of the latter doctrine. The trial court properly sustained the bank's motion for summary judgment.

### Propriety of the Ruling With Respect to Featherston

■ The allegations of the petition, filed in the present action, against Featherston involve his conduct as an officer of the bank with respect to appointing a successor trustee of the deed of trust of September 9, 1983 (Counts I and II). Count III of the petition alleges no facts against Featherston and deals only with the alleged violation of § 443.055 discussed earlier in this opinion. All counts deal with conduct of Featherston as an officer of the bank, and that conduct took place prior to the filing of the first action.

Count II contains general allegations concerning Featherston's prior employment by the Missouri Department of Finance as a bank examiner. No portion of the Bark-

leys' brief makes any mention of those allegations. If they have any materiality, which seems questionable to say the least, that materiality has not been asserted on this appeal and has not been preserved.

Since the allegations against Featherston in the second action pertain only to conduct on his part with reference to the same cause of action asserted against the bank in the first action, and the relationship of Featherston to that cause of action is predicated solely upon his actions as a bank officer taken during the course of his employment, Featherston, like the bank, validly interposed the defense of res judicata. *Berwald v. Ratliff,* 782 S.W.2d 709, 711 (Mo.App.1989); *Ingels v. Citizens State Bank,* 632 S.W.2d 9, 12[3] (Mo.App.1982); 46 Am.Jur.2d, Judgments §§ 570 and 571; Restatement (2d) of Judgments §§ 51 and 59(1); 50 C.J.S. Judgments § 757, p. 278.

With exceptions not applicable here, Restatement (2d) of Judgments § 51 reads:

"If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct. . . . "

In *Berwald,* a prior action, involving a claim of two borrowers against a bank and resulting in a judgment in favor of the bank, was a bar to a second action on the same cause of action against the president of the bank who was acting as an officer of the bank during the transaction involved. The bank officer was not a party to the

---

**5.** The absence of the "fourth factor" of collateral estoppel has been held to preclude the application of that doctrine. *City of St. Joseph v. Kaw Valley Tunneling, Inc.,* 660 S.W.2d 26, 32 (Mo. App.1983). Among cases including the fourth factor in a statement of that doctrine are *Patterson v. Null,* 751 S.W.2d 381, 386[4] (Mo.App.

1988); *Shannon v. Johnson,* 741 S.W.2d 791, 794[1] (Mo.App.1987); *Brown v. Jones,* 735 S.W.2d 155, 157[2] (Mo.App.1987); *Estate of Helmich v. O'Toole,* 731 S.W.2d 474, 479[9] (Mo App.1987); *McKee v. Wilmarth,* 728 S.W.2d 699, 700[1] (Mo.App.1987).

first action. The court pointed out, at 711, that the bank officer "was acting solely as an employee and agent of the bank" and that "the transactions forming the basis for [the second action] were in no way performed by [the officer] as an individual."

*Ingels* involved similar facts. In a prior action, only the bank was a party-defendant. In the second action, the bank and the bank president were co-defendants. The defense of res judicata was properly invoked by the bank president.

The trial court properly sustained Featherston's motion for summary judgment.

### Propriety of the Ruling With Respect to the Kennedys

■ The motion for summary judgment filed by defendants Claude Kennedy and Gertie Kennedy, his wife, was not based on the grounds of res judicata or collateral estoppel. That motion made no mention of the first action or its outcome or any issue in it.

The grounds contained in the Kennedys' motion were, in essence: On August 24, 1987, the bank, by warranty deed, transferred the title to the land, mentioned in the instant petition, to the Kennedys; the land had been purchased by the bank at a foreclosure sale "some two years" previously; the Kennedys were bona fide purchasers for value of the land and were without notice of any alleged irregularities in the foreclosure sale; as bona fide purchasers for value, the Kennedys held legal title and possession of the land at the commencement of the instant action.

The trial court, in sustaining the Kennedys' motion for summary judgment, found that "[the Barkleys] do not have any right, title or interest in and to [the land] and have no right to possession thereof and are not entitled to their prayer for a judgment and damages against [the Kennedys]."

The Barkleys' brief on this appeal makes no mention of any of the facts set forth in the three preceding paragraphs. "On appeal, a trial court judgment is presumed valid and the burden is appellants' to demonstrate incorrectness of the judgment."

*Delaney v. Gibson,* 639 S.W.2d 601, 604[4] (Mo. banc 1982). It is not proper for this court "to become an advocate for the appellant and search for a basis to challenge" the trial court's findings. *Massman Construction Co. v. Kansas City,* 487 S.W.2d 470, 478[6] (Mo.1972). A respondent does not have the burden on appeal to establish the correctness of a judgment. *Martin v. Norton,* 497 S.W.2d 164, 168[3] (Mo.1973).

A motion for summary judgment "shall state with particularity the grounds therefor...." Rule 74.04(c). The plain purpose of that requirement is to apprise the opposing party and the trial court (and in turn the appellate court) of the specific basis on which the movant claims he is entitled to summary judgment. With the issues so focused, the opposing party may prepare his defense to the motion and the trial court may make an informed ruling. If the motion is sustained and the opposing party appeals, the issues are clear-cut. The appellate court need not speculate concerning the grounds on which summary judgment was granted. All this serves to expedite the disposition of the case. A motion for summary judgment which fails to meet the requirement is defective.

The Kennedys' motion for summary judgment was granted and the trial court's judgment contains a finding upholding the grounds stated in that motion. On this appeal, the Barkleys have failed to attack those grounds or that finding. That failure leaves those grounds "as an independent basis for affirmance." *City of Lee's Summit v. Browning,* 722 S.W.2d 114, 115[1] (Mo.App.1986). To similar effect see *May Dept. Stores Co. v. County of St. Louis,* 607 S.W.2d 857, 868–869 (Mo.App.1980).

■ It is true that the trial court's judgment also contained a finding that the Kennedys were entitled to summary judgment on the ground of res judicata. Since the Kennedys' motion had not asserted that ground, and since res judicata is an affirmative defense, Rule 55.08, the issue of res judicata, so far as the Kennedys were concerned, was not before the court. That finding may be treated as surplusage and

its presence in the judgment does not diminish the force of the alternate finding which was responsive to the grounds contained in the Kennedys' motion. The Barkleys have failed to show that the trial court acted improperly in sustaining the Kennedys' motion for summary judgment.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.