**STATE of Missouri ex rel. Wendy R. TINNON, Relator,**

v.

**Hon. Marybelle MUELLER, Respondent.**

**No. 62579.**

Missouri Court of Appeals,
Eastern District,
Writ Division Three.

Jan. 19, 1993.

Joseph P. Rice, III, Cape Girardeau, for relator.

Gerald H. Johnson, Cape Girardeau, for respondent.

CRAHAN, Judge.

This is an original proceeding in prohibition seeking to prevent the respondent cir-

cuit judge from proceeding in the cause entitled "M. Louise Parkhurst, Personal Representative of the Estate of Raymond George Parkhurst, Deceased v. Wendy R. Tinnon, Defendant, Cause No. CV692–327CC," now pending in the Circuit Court of Cape Girardeau County, Missouri.

Relator Wendy R. Tinnon advances two grounds for issuance of the writ: (1) that the court lacks jurisdiction over the person by reason of defective or insufficient service of process; and (2) that the underlying cause of action is barred by the doctrines of res judicata and collateral estoppel. We find that the circuit court properly exercised personal jurisdiction over Relator and that the underlying action is barred by res judicata. We therefore order that the preliminary writ heretofore issued be made permanent.

### Service of Process

■ Relator correctly urges that a writ of prohibition will lie where there is a lack of personal jurisdiction due to insufficient service of process. *State ex rel. Lesliy v. Aronson,* 362 S.W.2d 61 (Mo.App.1962). Here, Relator contends that the officer's return does not satisfy the requirements of Mo.R.Civ.Pro. 54.20(b)(1) which sets forth what must be included in an officer's return of service when service is accomplished outside the state.[1] That rule provides:

(b) Outside the State—Officer's Returns—Affidavits of Service

(1) Every officer to whom summons or other process shall be delivered for service outside the state shall make an affidavit before the clerk or judge of the court of which affiant is an officer or other person authorized to administer oaths in such state stating the time, place and manner of such service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where such service was made. The court may consider the affidavit or any other evidence in determining whether service has been properly made.

■ The officer's affidavit required by this rule is the proof that must be presented to the court to establish that the defendant has been notified of the pendency of the action by the proper method. "In the absence of proof of service in accord with the rule, the court lacks the proof established by the Supreme Court as necessary to determine that the court has jurisdiction of the person of the defendant. In the absence of such proof, the court does not have jurisdiction to determine the rights of the defendant, unless he has consented to such jurisdiction or has waived the objection to personal jurisdiction." *Industrial Personnel Corp. v. Corcoran,* 643 S.W.2d 816, 818 (Mo.App.1981). "The court's jurisdiction is determined by the return of service, not by after the fact evidence of actual knowledge." *Id.* at 819.

■ Relator alleges that the officer's return filed with the court is fatally deficient in three respects: (1) the office held by the process server is not established by the affidavit; (2) the judge of the court did not sign the affidavit; and (3) the clerk of the court did not sign the affidavit. Before addressing these contentions, however, we are constrained to point out objections that Relator has *not* made and is deemed to have waived. Further, we note that there is no serious dispute in this case that Relator was, in fact, served with process. Although this is not by itself sufficient to confer jurisdiction where the return is deficient, personal jurisdiction may nevertheless be conferred by consent or waiver. *In re Marriage of Bradford,* 557 S.W.2d 720, 729 (Mo.App.1977).

The return of service in this case (reproduced in attachment "A" to this opinion) was executed on February 28, 1992 on a form which faithfully reproduced Supreme Court Form No. 5 as prescribed by the Supreme Court for use *prior to* January 17, 1989. On that date, the Supreme Court withdrew the form used in this case and published a new Form No. 5 entitled "Summons for Personal Service Outside the State of Missouri (Except Attachment Actions)." See Vol. 761–762 S.W.2d (Missouri

---

1. Relator is a resident of Illinois and was served    there.

Cases) pp. XXIV–XXVIII. This revision of Form No. 5 is significant and was necessitated by a significant change in Rule 54.-20(b)(1), which was amended by the Supreme Court on June 14, 1988, effective January 1, 1989. Prior to its amendment, Rule 54.20(b)(1) provided:

(b) Outside the State—Officer's Returns—Affidavits of Service

(1) Every officer to whom summons or other process shall be delivered for service outside the state shall make an affidavit before the clerk or judge of the court of which the affiant is an officer stating the time, place and manner of such service. There shall be attached to the affidavit the certificate of such judge or clerk as to the official character of the affiant and to his authority to serve process in civil actions within the state or territory where such service was made.

Comparing the requirements of former Rule 54.20(b)(1) with the requirements of the rule as amended, it is readily apparent why Supreme Court Form No. 5 had to be replaced. Use of the old form would not satisfy the requirements of Rule 54.20(b)(1) as amended because, inter alia, under the new rule the *officer making the return* must now attest to his official character and authority to serve process within the state. Under the former rule, the *judge or clerk* certified the officer's official character and authority to serve process, which is precisely what the former version of Supreme Court Form No. 5 contemplated. That certification will no longer satisfy the requirements of Rule 54.20(b)(1) which plainly requires that the official character and authority of the officer be attested *by the officer* who makes the service, not by the judge or clerk.

■ Nowhere in the record before us or in the petition or briefs filed in this court does Relator make any objection to the fact that the return of service was made on the wrong form or that the certification of the officer's official character and authority to serve process in the state of Illinois was made by someone other than the officer. Rather, Relator makes three very specific contentions: (1) that the office held by the process server is not established by the affidavit; (2) that the judge of the court did not sign the affidavit; and (3) that the clerk of the court did not sign the affidavit. Inasmuch as defects in the return of service may be waived if they are not raised in a timely manner, we hold that any defects in the return of service besides those specifically alleged by Relator have been waived and cannot now be considered in our determination of whether the trial court may properly exercise personal jurisdiction over Relator. Further, because the service in this case took place well after the amendments to Rule 54.20(b)(1) became effective, we will analyze the asserted defects in light of the requirements of Rule 54.20(b)(1) as they existed at the time of service—*i.e.*, as amended.

Relator's first contention is directed to the fact that a blank appearing in the judge or clerk's certification of the officer's official character and authority is not filled in. Specifically, Relator directs our attention to that portion of the certification that states "... who I certify was at the date of such service and now is *[Blank]* an officer of *DuPage* County in the State of *Illinois* and...." According to Relator, what belongs in the blank that was not completed is the "office held" by the officer and, according to Relator, this renders the return fatally defective because failure to fill in the "office held" by the officer means that the certification does not establish the officer's "official character" as required by Rule 54.20(b)(1). In support of these contentions, Relator cites *Industrial Personnel Corp. v. Corcoran, supra,* and *English v. English,* 592 S.W.2d 297 (Mo.App.1979).

*Industrial Personnel* does not aid Relator because the defect found in that case was that the certification was signed by a notary public, not by a judge or clerk as then required. The return in that case did identify the process server as a "Deputy Sheriff of Tarrant County" and the court had no occasion to consider whether such specification would have been either necessary or sufficient to establish "official character" if the certification had been made by the judge or clerk. 643 S.W.2d at 817–18.

*English* is directly contrary to Relator's contention. In *English,* the court found the return to be deficient on several grounds, among which was the fact that the affidavit "makes no reference to the official capacity of Deputy Fields." 592 S.W.2d at 299. Thus, the holding of *English* is that official capacity is not established by the officer's *title,* it is established by a certification that he is *an officer.*[2]

■ As discussed above, however, the requirement of Rule 54.20(b)(1) as amended is that the officer making the service attest to his official capacity, not the judge or clerk. Thus, although the certification by the judge or clerk that Mr. Putnam is an officer of DuPage County would in the past have been a satisfactory certification of Putnam's "official character," that does not satisfy the requirement of the current rule that such attestation come from Putnam. This is not fatal, however, because above *Putnam's* signature, he states that he is an "Officer of DuPage County." Thus, Putnam did attest to his "official character" and the return is not defective on that basis.

■ Relator's remaining contentions are that the return is defective because the certification was not signed by the judge or the clerk. Relator concedes that the certification was signed by the deputy clerk but maintains that a deputy clerk may not sign the return in place of the clerk, citing *In re Marriage of Bradford,* 557 S.W.2d 720, 729 (Mo.App.1977). Further, Relator asserts that the Judge's signature appearing on the return is a facsimile and not an actual signature. *Bradford* is not controlling here because Rule 54.20(b)(1) no longer requires that the return be signed by the judge or clerk. Rather, as amended, the rule requires that the officer make an affidavit before the clerk or judge of the court of which the affiant is an officer "or other person authorized to administer oaths in such state."[3] Relator makes no contention that the deputy clerk is not authorized to

administer oaths in the state of Illinois. We find that the officer's making of his affidavit before the deputy clerk satisfied the requirement of Rule 54.20(b)(1) as amended and therefore need not reach Relator's contentions about the judge's signature.

Based on the foregoing, we find that the defects asserted by Relator did not render the return fatally defective and that any other defects in the return have been waived. The trial court therefore may properly exercise personal jurisdiction over Relator.

### Res Judicata

■ Relator further maintains that this action is barred by res judicata. Prohibition will lie where reference to the pleadings alone conclusively demonstrates that the pending petition attempts to state a cause of action barred by res judicata. *State ex rel. Hamilton v. Dalton,* 652 S.W.2d 237, 239 (Mo.App.1983).

The underlying action against which Relator seeks prohibition in this case is a suit captioned "M. Louise Parkhurst as Personal Representative of the Estate of Raymond G. Parkhurst, Deceased, Plaintiff v. Wendy R. Tinnon, Defendant, Cause No. CV692–327CC," filed September 8, 1992. Such suit seeks an accounting and recovery of a certificate of deposit paid to Tinnon pursuant to a "payment on death ("POD")" designation by decedent. Authority for such accounting and recovery is based on § 461.071 RSMo. 1992 Supp.

In support of her motion to dismiss below and her petition in this court, Relator Tinnon filed the petition and judgment in an earlier action styled "M. Louise Parkhurst, Individually and as Personal Representative of the Estate of Raymond George Parkhurst, Deceased, Plaintiff, v. Wendy R. Tinnon and Boatmen's National Bank of Cape Girardeau, Missouri, Defendants,

---

2. We note, however, that new Supreme Court Form No. 5 clearly contemplates that the officer will fill in his or her official title. We express no opinion on whether an officer's failure to do so will render service fatally defective.

3. This change is very likely the reason that Rule 54.20(b)(1) now requires the officer to attest to his official character and authority. A notary public or other person authorized to administer oaths but not affiliated with the court would not be in a position to do so.

Cause No. CV690–404CC." That petition was filed in the same court on February 21, 1990 and, after an evidentiary hearing thereon, a judgment was rendered by the Honorable A.J. Seier on January 2, 1991.

From the petitions and the judgment in No. CV690–404CC, we learn that M. Louise Parkhurst is the widow of Raymond G. Parkhurst and that Defendant/Relator Tinnon is a daughter of Raymond G. Parkhurst from a previous marriage. On December 2, 1988, Raymond G. Parkhurst and M. Louise Parkhurst, husband and wife, purchased a $63,000.00 certificate of deposit ("CD") from Boatmen's Bank. The certificate was titled "Raymond G. Parkhurst or M. Louise Parkhurst." The contract which created this certificate was the signature card executed by the Parkhursts. Only one signature was required to transfer the funds held by Boatmen's.

On June 2, 1989, Raymond G. Parkhurst surrendered this CD to Boatmen's. $29,-324.79 of the proceeds were applied to a loan owed by the Parkhursts to Boatmen's. $3,675.21 was applied to a savings account not at issue here. The balance of $30,-000.00 was applied to the purchase of a new certificate of deposit titled in the name of "Raymond George Parkhurst P.O.D. Wendy R. Tinnon." On that date Raymond G. Parkhurst also executed a new signature card designating himself as owner of the new CD and designating the type of ownership as P.O.D. (pay on death) Wendy R. Tinnon.

Sometime in August, 1989, M. Louise Parkhurst became aware that her name was not on the new CD. Shortly thereafter, she filed actions for Dissolution of Marriage and for an Order of Protection under the Adult Abuse Act. On October 24, 1989, the court ordered the Parkhursts not to transfer, encumber or otherwise dispose of their property. Subsequently, on December 2, 1990, the automatic renewal

date for the CD, Raymond G. Parkhurst presented the second CD to Boatmen's in exchange for a third CD identical in all respects to the second CD except that it bore on its face the current rate of interest then paid by Boatmen's.

The Parkhurst's dissolution was tried and a settlement thereof was reached on February 13, 1990. However, Raymond Parkhurst died on February 15, 1990, before an order dissolving the marriage could be entered.[4]

Shortly after Mr. Parkhurst's death, M. Louise Parkhurst entered the decedent's apartment and discovered the third CD. On February 21, 1990, she filed Cause No. CV690–404CC which, as described above, was captioned "M. Louise Parkhurst, Individually and as Personal Representative of the Estate of Raymond George Parkhurst, Deceased, Plaintiff v. Wendy R. Tinnon and Boatmen's National Bank of Cape Girardeau, Missouri, Defendants." In that action, M. Louise Parkhurst specifically pled that she was the widow of Raymond George Parkhurst and an applicant for letters testamentary to be named personal representative of the estate of Raymond George Parkhurst, deceased,[5] and sought a temporary restraining order, injunction and "such further relief as to the court may seem just and proper in the premises." The only theory of recovery asserted was that the direction by Raymond G. Parkhurst to transfer the CD upon his death to Wendy R. Tinnon was in fraud of Ms. Parkhurst's marital rights.

After issuing a temporary restraining order, the trial court held a hearing at which, by consent of the parties, it took judicial notice of the contents of its files in the probate case, the dissolution proceeding and the action for an order of protection, as well as the transcript of the dissolution proceeding. On January 2, 1991, the trial

---

4. Mr. Parkhurst's daughters' attempted appeal of the dismissal of the dissolution proceeding was dismissed for lack of jurisdiction in *Parkhurst v. Parkhurst*, 799 S.W.2d 159 (Mo.App. 1990).

5. In the case below, M. Louise Parkhurst alleges that she was, in fact, appointed personal repre-

sentative on February 23, 1990, two days after the filing of the petition in Cause No. CV690–404CC. A separate appeal of the trial court's disposition of the probate estate filed by Relator was considered in *Matter of Parkhurst*, 821 S.W.2d 575 (Mo.App.1992).

court filed its judgment, supported by extensive findings of fact and conclusions of law, finding the issues in favor of defendants Tinnon and Boatmen's Bank. Specifically, the trial court found that an action for transfer of personal property in fraud of marital rights belongs to the surviving spouse individually and not in her capacity as personal representative of the decedent's estate. The trial court also found that the transfer at issue was made with fraudulent intent within the meaning of § 474.150.1 RSMo. Nevertheless, the court found that Ms. Parkhurst as an individual was not entitled to relief on the facts proven because her share of the "augmented estate" calculated pursuant to § 474.163 RSMo. was such that she would be entitled to no spouse's share and no portion of the CD if she brought an action to set aside the transfer under § 474.150.1. The trial court therefore concluded that Ms. Parkhurst would suffer no cognizable loss if the CD was paid over to Wendy R. Tinnon and, as indicated above, rendered judgment for defendants Tinnon and Boatmen's.[6]

On September 8, 1992, M. Louise Parkhurst filed the suit against which Relator now seeks our writ of prohibition. That suit, Cause No. CV 692–327CC, is styled "M. Louise Parkhurst, Personal Representative of the Estate of Raymond George Parkhurst, Deceased, Plaintiff v. Wendy R. Tinnon, Defendant" and is denominated as a "Petition for Accounting." The relief sought is an accounting pursuant to § 461.071 RSMo. 1992 Supp. and payment of $30,000.00, plus interest, to plaintiff as personal representative of the Estate of Raymond George Parkhurst and for such other relief as the court may deem just and proper.

■ In order for res judicata to apply, there must be (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *Barkley v. Carter County State Bank,* 791 S.W.2d 906, 910 (Mo.App.1990). Ms. Parkhurst on behalf of Respondent urges that there is no similarity of parties

or causes of action, characterizing the first suit as an action in equity for a restraining order where the plaintiff was an individual and the decedent's estate was not involved and the second suit as an action at law for an accounting pursuant to § 461.071 brought by Ms. Parkhurst in her capacity as personal representative and not in her individual capacity. We disagree.

■ The thing sued for and the cause of action are identical in both suits—*i.e.,* the $30,000.00 certificate of deposit and the decedent's direction to transfer the CD to Relator upon his death. The "cause of action" does not, as Ms. Parkhurst maintains, refer to the *form* of action in which the claim is asserted but to the *cause for* action, *i.e.,* the underlying facts combined with the law giving the party a *right* to remedy of one form or another based thereon. *State ex rel. Shea v. Bossola,* 827 S.W.2d 722 (Mo.App.1992); *Barkley,* 791 S.W.2d at 910.

■ So long as the elements of res judicata are otherwise satisfied, the fact that the first suit was brought in equity and the second at law is immaterial. *Barkley, supra,* 791 S.W.2d at 911–912. In essence, the two suits before us simply represent different theories by which to obtain recovery of all or a portion of the CD at issue, either for the estate or for Ms. Parkhurst individually. "Separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Siesta Manor, Inc. v. Community Federal Savings and Loan Assn.,* 716 S.W.2d 835, 839 (Mo.App.1986) (citing *Restatement (Second) of Judgments,* § 24, comment c).

■ As for Ms. Parkhurst's contention that she brought the first suit solely in her individual capacity and the second solely in her representative capacity, even a cursory examination of the captions in the two ac-

---

**6.** So far as we can determine, no appeal was taken from this judgment and the merits of Cause No. CV690–404CC are not before us.

tions demonstrates otherwise. "A party to an action is a person whose name is designated on the record as plaintiff or defendant." *M & A Electric Power Coop. v. True,* 480 S.W.2d 310, 314 (Mo.App.1972). The captions of the two cases as set forth above plainly demonstrate that Ms. Parkhurst filed the first action in both her representative and individual capacities and the second action in her representative capacity. The fact that the *judgment* in the first suit is simply captioned "M. Louis [sic] Parkhurst, Plaintiff v. Wendy R. Tinnon and Boatmen's National Bank of Cape Girardeau, Mo., Defendants" does not support the opposite conclusion. Contrary to Ms. Parkhurst's contention, the trial court's failure to specify in the caption that its judgment included Ms. Parkhurst in her representative capacity does not mean that the judgment operated solely against her in her individual capacity. In our view, the more reasonable construction of the judgment is that it was intended to dispose of her claims in *both* capacities. As noted above, the petition was so captioned and both capacities were set forth in the body thereof. The caption of the judgment did not state that it applied solely to Ms. Parkhurst as an individual. More importantly,

the body of the judgment itself expressly considered and disposed of Ms. Parkhurst's representative claim, holding in effect that it failed to state a claim upon which relief could be granted because a claim for fraud on marital rights belongs solely to the surviving spouse. Inasmuch as both suits involved the same parties and the claims were asserted by and against them in the same capacities, the remaining requirements for res judicata are satisfied. *Barkley,* 791 S.W.2d at 910, 913.

In summary, we find that Ms. Parkhurst did assert a claim for relief in her representative capacity in the first action which involved the same cause of action as the present action. That claim resulted in a judgment against her in both her individual and representative capacities. Ms. Parkhurst's assertion of a different theory of recovery in her representative capacity in the instant case is barred by res judicata. Accordingly, our preliminary order prohibiting Respondent from conducting further proceedings in Cause No. CV692–327CC is now made permanent.

CARL R. GAERTNER, P.J., and SMITH, JJ., concur.

## ATTACHMENT A

## RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

(1) By delivering on the ___26th____ day of __February_____, 19_92_ a copy of the summons and a copy of the petition to each of the within-named defendants ___Wendy R. Tinnon Female/White/32___

_____

(2) By leaving on the _____ day of _____, 19____ each of the within-named

defendants _____

_____

a copy of the summons and a copy of the petition at the respective dwelling place or usual place of abode of said defendants with some person of his or her family over the age of 15 years;

(3) _____

_____

_____

_____

FILED

MAR - 4 1992

All done in ____Du Page_____County_____Illinois_____

CHARLES P. HUTSON
CIRCUIT CLERK

Officer's fees:

Summons
Non est            Officer of ___Du Page_____ County,
Mileage

By _____
Robert J. Putnam, #153

Total        NC

Subscribed and sworn to before me this ___28th_____ day of ___February_____, 19_92_,

by __Robert J. Putnam_____, who I certify was at the date of such service and now is

_____ an officer of _____Du Page_____ County in the

State of ___Illinois_____ and as such officer is duly authorized to serve process in civil actions within said state and is an officer of the court of which I am the judge or clerk.    FEB 28 1992

Witness my hand and the seal of the _____ Court,
within and for the County and State aforesaid.

DEPUTY CLERK

### DIRECTIONS TO OFFICER MAKING RETURN ON SERVICE OF SUMMONS

A copy of the summons and a copy of the petition must be served on each defendant. If any defendant refuses to receive the copy of the summons and petition when offered to him, the return shall be changed accordingly so as to show the refusal of the officer to deliver the summons and petition to the defendant and the defendant's refusal to receive the same.

Service shall be made as follows:

(1) On Individual. Upon an individual, including an infant or incompetent person not having a legally-appointed guardian, by delivering a copy of the summons and petition to him personally or by leaving a copy of the summons and petition at his dwelling house or usual place of abode with some person of his family over the age of 15 years, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process.

(2) On Guardian. Upon an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally.

(3) On Corporation, Partnership or Other Unincorporated Association. Upon a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process.

(4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body, by delivering a copy of the summons and petition to the clerk of the county governing body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by any officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, corresponding charges should be made in the return.

The officer making the service must swear to the affidavit of service before the clerk, deputy clerk or judge of the court of which he is an officer and such clerk, deputy clerk or judge must execute the certificate showing the official character of such officer and his authority to serve process.

The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.